Davis v. Friedlander.

1. The assignment made to assignees in bankruptcy in proceedings which were brought more than four months after attachments, issued in a chancery suit pending in a State court, were levied upon the property of the bankrupt, does not divest the jurisdiction of that court to determine the priority of lien respectively claimed by the attaching creditors, or to administer the fund arising from the sale of the property.

2. His assignees in bankruptcy, if they enter their appearance in the suit, are bound by the decree, affirming the validity of the liens acquired by the levy of the writs, and directing the application of the proceeds of the sale to satisfy them. The assignees cannot thereafter set up in any other court their title to the property.

3. A., claiming that by a proceeding at law he had a prior lien, filed in the District Court sitting in bankruptcy his bill against the other attaching creditors, the assignees in bankruptcy, and the purchasers of the property. He prayed that the sale under the writs sued out of the chancery court be set aside, that the property be delivered to and sold by the assignees, and that the proceeds be first applied to the satisfaction of his lien. *Held,* that the bill would not lie.

Appeal from the Circuit Court of the United States for the Western District of Tennessee.

Friedlander, Stich, & Co., sued Kaufman, their debtor, in the law court of Memphis, taking out an attachment, which was levied, Nov. 30, 1866, upon his real estate in that city. On different days in December, 1866, and January, 1867, Davis and other creditors sued him in the chancery court, each taking out an attachment, which was promptly levied on the same real

estate. On the 14th of July, 1868, he was adjudged a bankrupt upon his petition, filed the 30th of the preceding May, — more than a year after the levy of the last of the attachments. Cirode and Coronna were appointed his assignees in bankruptcy, and to them was made an assignment of his rights, property, and effects. On the 21st of November, 1868, they appeared in the suits in the chancery court, — then consolidated and about to be heard, — and, with their consent, an order was entered making them, in their capacity as his assignees, parties defendant. They had the benefit of any defence they might at any time have had, and assented that the hearing of the cases should proceed. On the 21st of December, 1868, a final decree was entered in the chancery court ascertaining the amount of his indebtedness to the respective complainants, and adjudging that the attached property be sold, free from any right or equity of redemption in him, or in any of the other defendants, and that the proceeds be applied in satisfaction of the debts due the attaching creditors, — the surplus, if any, to be paid to his assignees.

On the 1st of March, 1869, the day fixed for the sale of the attached property, by the master's advertisement, Friedlander, Stich, & Co. presented to the chancellor of the chancery court a petition asserting, in virtue of their prior attachment in the law court, a lien superior to that acquired by Davis and others, under their respective attachments in the chancery court, and praying that the sale, so far as it related to the property covered by their attachment, be postponed; that they be made parties to the consolidated equity suits; and that their priority of lien be established. He declined to order the postponement asked, but indorsed upon the petition that " the sale will proceed, and the complainants to this bill may file this, or a petition, in the consolidated causes to establish their priority, if such exists, to the fund." It does not appear that Friedlander, Stich, & Co. availed themselves of this right, or gave any further attention to, or had any further connection with, the chancery suits. The sale took place as advertised, Hill becoming the purchaser of a part of the property at the price of $2,500, while the remainder was struck off to Carter, Kirtland, & Co., attaching creditors, at the price of $12,520.

The bids were less, by nearly one-half, than the aggregate debts of the attaching creditors in the equity suits. No exceptions were filed to the report of sale. Hill complied with the terms of sale, and his purchase was confirmed. A decree was entered declaring that all the right, title, and interest of the parties, in and to the property purchased by Hill, be divested out of them, and vested in him. It does not appear, from the transcript, that Carter, Kirtland, & Co. complied with the terms of sale, or that any final action was taken by the court as to their purchase. In July, 1869, Friedlander, Stich, & Co. obtained judgment in the law court against Kaufman for the sum of $19,311.81, the amount of their claim, and also an order for the sale of the attached property, the same previously sold under the decree. But that order was suspended to await the consent of the court in bankruptcy to its execution, or until the further order of the law court.

The present suit was commenced on the 20th of August, 1870, by Friedlander, Stich, & Co. filing their petition in the District Court sitting in bankruptcy. The attaching creditors in the suit in the chancery court, the purchasers at the sale of March 1, 1869, and the assignees in bankruptcy of Kaufman were made defendants. Its manifest object is to secure an adjudication, establishing the prior lien of Friedlander, Stich, & Co., as against the other attaching creditors, upon the real estate attached, alike, in the suits in the law and the chancery courts of Memphis. To that end a decree is asked declaring the sales under the order of the latter court to be void, and placing the attached property in the possession of Kaufman's assignees, to be by them sold, under the order of the bankruptcy court, — the proceeds of sale to be applied first to the satisfaction of the judgment of Friedlander, Stich, & Co., in the law court. The District Court disregarding the sale made under the decree of the State court, gave those parties all the relief asked, and its decree was affirmed by the Circuit Court. Davis and the other creditors thereupon appealed.

Other facts are disclosed by the record, but in the view taken of the case by the court it is unnecessary to state them.

*Mr. Fillmore Beall* and *Mr. William M. Randolph* for the
appellants.

*Mr. Lewis Abraham* and *Mr. Charles D. Mayer* for the
appellees.

MR. JUSTICE HARLAN, after stating the facts, delivered the
opinion of the court.

In *Doe* v. *Childress* (21 Wall. 642), we considered the effect
of proceedings in bankruptcy upon an attachment issued from
a State court and levied upon the property of the bankrupt,
more than four months prior to their commencement. That
was an action of ejectment, by the assignee of a bankrupt, to
recover land claimed by the defendant under a decretal sale in
an attachment suit in a State court against the bankrupt. The
latter was declared a bankrupt ten months after the institution
of the attachment suit, four months before the decree therein,
and seven months prior to the sale at which the defendant
became the purchaser of the land. Upon this state of facts
it was ruled that the proceedings in bankruptcy did not oper-
ate to dissolve the attachment; that the debtor's title passed
to the assignee, subject to the lien created by the attachment;
and that a judgment could be entered for the sale of the
property, notwithstanding a discharge previously granted was
pleaded in bar of the action. It was said by the court that,
" where the power of a State court to proceed in a suit is sub-
ject to be impeached, it cannot be done except upon an inter-
vention by the assignee, who shall state the facts and make
the proof necessary to terminate such jurisdiction. . . . If the
assignee had intervened in the suit, he would have been entitled
to the property or its proceeds, subject to this [the attachment]
lien. He did not, however, intervene or take any measures in
the case. He allowed the property to be sold under the judg-
ments in the attachment suits, and those under whom the
defendant claims purchased it, obtaining a perfect title to the
same."

In *Scott* v. *Kelly* (22 id. 57), it appears that the assignee
in bankruptcy became a party to an attachment suit in a State
court, commenced shortly before the defendant was declared a
bankrupt. The attachment was issued and levied after the

adjudication. The assignee claimed the attached property, but the decision in the State court was adverse to him. Upon writ of error to this court, we said that " the assignee in bankruptcy voluntarily submitted himself and his rights to the jurisdiction of the State court. Being summoned, he appeared without objection, and presented his claim for adjudication by that court. No effort was made to remove the litigation to the courts of the United States. It is now too late to object to the power of the State court to act in the premises and render judgment."

In *Eyster* v. *Gaff* (91 U. S. 521), the main question considered was whether a State court, in which a foreclosure suit was pending at the time of the bankruptcy of the defendant, had jurisdiction to proceed without bringing the assignee before the court. The question arose in an action of ejectment instituted by the assignee against the purchaser at the decretal sale in the foreclosure suit. Referring to the authority expressly given the assignee by statute, to prosecute or defend all suits in which the bankrupt was a party, the court said : " If there was any reason for interposing, the assignee could have had himself substituted for the bankrupt, or made a defendant on petition. If he chose to let the suit proceed without such defence, he stands as any other person would on whom the title had fallen since the suit was commenced. It is a mistake to suppose that the bankrupt law avoids, of its own force, all judicial proceedings in the State or other court the instant one of the parties is adjudged a bankrupt. There is nothing in the act which sanctions such a proposition. The court, in the case before us, had acquired jurisdiction of the parties and of the subject-matter of the suit. . . . Having such jurisdiction, and performing its duty as the case stood in that court, we are at a loss to see how its decree can be treated as void." Again : " The debtor of a bankrupt, or the man who contests the right to real or personal property with him, loses none of those rights by the bankruptcy of his adversary. The same courts remain open to him in such contests, and the statute has not divested those courts of jurisdiction in such actions. If it has, for certain classes of actions, conferred a jurisdiction, for the benefit of the assignee, on the Circuit and District Courts of

the United States, it is concurrent with, and does not divest that of, the State courts."

These doctrines were further elaborated in *Claflin* v. *Houseman* (93 id. 130), where it was held that the assignee in bankruptcy, under the act of 1867, had authority to bring a suit in the State courts, wherever those courts were invested with appropriate jurisdiction suited to the nature of the case. See also *Jerome* v. *McCarter*, 94 id. 734; *McHenry* v. *La Société Française*, 95 id. 58.

The principles announced in the foregoing cases would seem to be decisive of the main questions arising on this appeal, and we are of opinion that the decree below cannot be sustained. It rests, necessarily, upon the ground, that immediately upon the assignment of the bankrupt's property to his assignees, the State court of chancery — although the attachments therein were sued out more than four months preceding the bankruptcy — had no jurisdiction to determine the relative rights of the attaching creditors and the assignees in bankruptcy, or to order a sale of the attached property, and apply the proceeds to the satisfaction of the debts of those creditors. But no such position can be maintained. It was competent for the assignees, upon their appointment and qualification, by appropriate proceedings, directed against individual creditors, suing in other courts, to have brought all the property in which the bankrupt had an interest, including that attached in the suits in the State courts, under the direct control of the bankruptcy court, to be disposed of under its orders, with due regard, however, to the previously acquired rights and equities, in whatever way arising, of all the creditors of Kaufman. But they were not bound to pursue that course. Consistently with the bankrupt law, as interpreted by this court, they were at liberty to appear in the State court, and assert there whatever rights they, as assignees, had in the attached property. Electing to pursue the latter course, they voluntarily submitted to the jurisdiction of the State court, which had ample authority to adjudicate, between the attaching creditors and the assignees in bankruptcy, upon all matters arising in the suits before it. Without questioning (as they do not now) the debts of the attaching creditors or the validity of their attachments, the

assignees became parties defendant in the equity suits. They neither filed nor offered to file any formal pleading. Nor did they advise the chancery court of the attachment of Friedlander, Stich, & Co. in the law court. They left that court to adjudge what were their rights in the property attached. Its final decree secured to them whatever surplus might remain after applying the proceeds of sale to the demands of the attaching creditors. If the bankrupt owed the attaching creditors the sums by them respectively claimed, and if the attachments were so issued and levied as, under the laws of the State, to create a valid lien upon the property, it is clear that the State court gave the assignees all that could have been awarded *them*.

It results from what has been said, that the sale, under that decree, — whoever became the purchasers of the attached property, whether third persons or parties to the suits, — divested the *assignees* of whatever interest or title *they* had in the property. That decree, having been passed by a court of competent jurisdiction as to parties and subject-matter, and never having been modified by the court which rendered it, or by any court having authority to review its action, the assignees are precluded from asserting in any other court any interest or title whatever in the property thus sold. Had the present suit been instituted directly by the assignees, for the purpose of setting aside the sale made under the order of the State court, and of procuring another sale of the attached property, under the orders of the court in bankruptcy, the proceedings in the State court would have been a conclusive answer to such an action.

Plainly, therefore, the present suit by Friedlander, Stich, & Co. is an attempt to invoke the jurisdiction of the District Court sitting in bankruptcy, to the end that they may establish, as against other creditors of Kaufman, their priority of lien upon property, in which, as we have seen, the assignees can now assert no right or interest for the benefit of general or unsecured creditors. Whether appellees have such priority of lien in virtue of their attachment in the law court ; whether the proceedings in that court were such as, under the laws of Tennessee, gave them a lien superior to that acquired by the

respective attaching creditors in the suits in the chancery court; whether, by reason of their petition addressed to the chancellor of the latter court, and his action thereon, they became, in any proper sense, parties to those suits, or bound by the decree therein rendered, or, whether their rights were altogether unaffected by that decree, — are all questions in which the assignees have now no interest. These questions concern only the respective attaching creditors in the law and chancery courts, and for the determination of them the present appellees may not invoke the jurisdiction or aid of the bankruptcy court. The decree, and the sale thereunder, withdrew the attached property from the assets of the bankrupt. The property brought less than the claims of the attaching creditors; and since the assignees cannot question, collaterally, the proceedings in the State court, to which they voluntarily became parties, they have no possible interest in this litigation. It is, we repeat, a contest exclusively between attaching creditors as to priority of liens upon property in the disposition of which, so far as we can ascertain from the present record, the assignees have not the slightest pecuniary interest.

The decree of the Circuit Court will be, therefore, reversed, with directions that the petition of Friedlander, Stich, & Co., filed in the District Court sitting in bankruptcy, be dismissed with costs to the present appellants, but without prejudice to any claim they may assert, by any proper proceedings in a court of competent jurisdiction, to a prior lien as against appellants, or others, upon the property levied upon by the attachment in the law court of Memphis; and it is

*So ordered.*