THE BUCK STOVE & RANGE COMPANY *et al.* v. C. C. VICKERS *et al.*.[*]
No. 15,964.

SYLLABUS BY THE COURT.

1. CORPORATIONS—*Foreign—Time to Procure a License—Stare Decisis.* The decision upon the last review of this case (*Vickers v. Buck,* 70 Kan. 584) that the plaintiff corporations should be allowed a reasonable time in which to comply with the statute relating to foreign corporations doing business in this state is the law of the case.

2. ——— *Dissolution—Parties.* A corporation which had been dissolved and was non-existent for several years before the trial could not maintain the suit. It had no successor, and its action was properly abated.

[*] Pending in the supreme court of the United States on a writ of error allowed August 21, 1909.

3. —————— *Parties—Substitution—Laches.* A corporation named as a plaintiff in the suit had assigned its entire cause of action to another corporation before the suit was commenced. The assignee made its first appearance in the action ten years after the assignment had been made and moved for substitution without any claim of mistake in commencing the suit in the wrong name. In the meantime the corporation in whose name the suit was instituted had been dissolved and ceased to exist. *Held*, that there was no error in denying the motion and abating the action.

4. —————— *Parties—Substitution—Assignee.* Another one of the plaintiffs was a foreign corporation doing business in this state without having complied with our statutes, and having no right to maintain a suit in the courts of this state. While this suit was pending this corporation was adjudicated a bankrupt and its cause of action was assigned by the trustee to another foreign corporation, which appeared in the action more than a year afterward and asked to be substituted in place of the bankrupt plaintiff. *Held*, that the assignee could acquire no better rights than the plaintiff had, and as the plaintiff had no right to maintain the suit it should be dismissed.

Error from Saline district court; ROLLIN R. REES, judge. Opinion filed April 10, 1909. Affirmed.

*M. B. Nicholson*, and *W. J. Pirtle*, for the plaintiffs in error.

*S. H. Allen, Otis S. Allen*, and *George S. Allen*, for the defendants in error.

The opinion of the court was delivered by

BENSON, J.: These suits were commenced to set aside a conveyance on the ground of fraud. The proceedings upon three previous trials were considered in *Vickers v. Buck*, 60 Kan. 598, 65 Kan. 97, and 70 Kan. 584. All the plaintiffs are foreign corporations, and judgment creditors of C. C. Vickers. The court found that the conveyance of all the lands, except a homestead, was fraudulent, but refused to give judgment for any of the plaintiffs, for reasons now to be considered.

The defendants pleaded that the plaintiffs were do-ing business in this state without legal authority be-cause they had not complied with the statutory require-ments concerning foreign corporations, and that they had no legal capacity to maintain a suit in the courts of this state. (Laws 1898, ch. 10; Laws 1901, ch. 125.) They also pleaded a homestead exemption on one quarter-section of the lands in question. The court found upon the first of these issues as follows:

"The Samuel Cupples Woodenware Company, the St. Louis Refrigerator & Wooden Gutter Company, the St. Louis Glass & Queensware Company [and the Buck Stove & Range Company], have each of them, ever since 1901, been sending traveling salesmen into this state, who took orders from citizens of Kansas dealing in their products, and sent them to their re-spective houses at St. Louis. If the orders were ap-proved at headquarters, the goods were shipped to the customers in Kansas, and were paid for by them by remitting directly to the sellers at St. Louis."

The court concluded that the corporations named in this finding had no right to maintain the suit until they complied with the statutes relating to foreign cor-porations doing business in this state, that they should have a reasonable time to do so, and allowed them five months for that purpose and continued the cause until the next term without entering judgment on the find-ings. At the expiration of this period the corporations which were given this opportunity filed their written statement respectfully declining so to comply with the laws of this state, and protesting against the dis-missal of their suits for their failure to do so, giving as their reasons that they were engaged exclusively in interstate commerce; that the court had no power to impose such conditions upon them; that such conditions were in violation of the constitution and laws of the United States relating to interstate commerce; that their right to maintain the suits originated in inter-state commerce between Vickers, residing in Texas, and citizens of states other than Kansas, and before

the passage of these statutes; and that chapter 125 of the Laws of 1901 was void as contravening the commerce clause of the federal constitution. They also moved for judgment on the findings upon substantially the same ground. Upon consideration of this declination and motion the court, when the case was called for final judgment, dismissed the suits as to the corporations named, at their costs.

The court found that the Consolidated Steel & Wire Company had formerly transacted business in the same manner as the other corporations, but that it went out of business in 1901, and had not carried on any business anywhere since then. On the hearing of motions for a new trial and for judgment the defendants suggested that this corporation had been dissolved in November, 1899. The court upon competent evidence then made the further finding "that since the findings of fact were rendered in this case it has been suggested to the court and shown by legal proofs duly made herein that the Consolidated Steel & Wire Company has ceased to exist, and that said company is a defunct concern," and ordered that the action be abated as to that party.

The court found that another plaintiff, the Galveston Rope & Twine Company, had been dissolved and its charter forfeited in the year 1896, and that previous to the forfeiture and before this suit was commenced it had sold and assigned the judgment pleaded in its name to one Homer, who had assigned it to the Galveston Rope Company. As a conclusion of law the court held that the Galveston Rope & Twine Company could not maintain the suit. A motion by the Galveston Rope Company to be substituted in the suit was filed August 3, 1906. It appears that the motion was considered at the trial when the findings were made, and in the judgment the suit was abated as to the Galveston Rope & Twine Company.

Aultman, Miller & Co., another plaintiff, was adjudicated a bankrupt in proceedings under the federal

bankruptcy act, on April 28, 1903, and in July follow-
ing all its assets, including the judgment set out in the
petition, were assigned to the Aultman & Miller Buck-
eye Company, a corporation organized under the laws
of Ohio. The latter company filed its petition for sub-
stitution in this suit May 23, 1906, to which the de-
fendants answered alleging that this corporation was
also doing business in Kansas without authority, and
was without capacity to maintain the suit. They also
pleaded the disability of Aultman, Miller & Co. by reason
of bankruptcy, that there had been no revivor or sub-
stitution for more than one year after the adjudication,
and objected to the substitution. The petition for sub-
stitution was granted subject to the right of the defend-
ants to contest the right of the petitioner to maintain
the suit. At the trial the suit was held to be abated as
to Aultman, Miller & Co. by reason of the adjudication
in bankruptcy.

No complaint is made of the findings of fact except
in respect to the homestead.

The case was made, signed and filed in the name of
the original plaintiffs. In the petition in error the Gal-
veston Rope Company appears as successor to the Gal-
veston Rope & Twine Company, and the Aultman &
Miller Buckeye Company as successor to Aultman,
Miller & Co. The corporations whose names were thus
dropped do not otherwise appear in this court, and the
corporations appearing in this court as their successors
did not join in making the case for review here. For
these reasons the defendants move to dismiss these
proceedings, but in the view we take of the case it will
not be necessary to decide this motion.

The contention of the plaintiffs who were required
to comply with the statutes relating to foreign corpo-
rations, as a condition precedent to the entry of judg-
ments in their favor, that they were not subject to the
provisions of such statute because they were engaged in
interstate commerce was decided against that claim in

3—80 KAN.

*Vickers v. Buck,* 70 Kan. 584. That decision is the law of the case. (*Railway Co. v. Stone, ante,* p. 7.)·

The abatement of the suit as to the Consolidated Steel & Wire Company is complained of. Since this corporation had been dissolved in the year 1899—a fact which is not disputed—it could not maintain the suit nor enforce a judgment. (*MacRae v. Piano Co.,* 69· Kan. 457.) The defunct corporation could not be heard, for its voice was stilled in death, and it had no successor so far as the record discloses.

The Galveston Rope Company, which succeeded to the rights of the Galveston Rope & Twine Company before this suit was brought, was not a party to the suit, and the last-named corporation never had any interest in this suit, although commenced in its name. If it should be claimed that upon a showing of mistake in bringing the suit in the wrong name an amendment or substitution should have been allowed, no suggestion of mistake was made; and the motion for substitution was not made until 1906, more than ten years after the suit was brought. A suit then in the name of the real party in interest would have been twice barred by limitation. To say nothing of any other ground, the denial of the motion after so great a lapse of time was within the discretion of the court, and will not be disturbed.

The court refused the petition of the Aultman & Miller Buckeye Company, as the successor in interest of Aultman, Miller & Co., upon the ground that, more than one year having elapsed after bankruptcy, a revivor could not be allowed except by consent. (Civ. Code, § 433.) In *Cunkle v. Interstate Rld. Co.,* 54 Kan. 194, following *K. O.· & T. Rly. Co. v. Smith,* 40 Kan. 192, it was held that where several railroad companies had been consolidated under a new name the old companies ceased to exist, and, no motion having been made to substitute the successor or to revive the proceedings in its name until more than one year after the consolidation, the old companies had become defunct

and a revivor could not be allowed against one of them without the consent of the new company. The statute construed and applied in these cases is section 40 of the code of civil procedure, which provides:

"In case of the death or other disability of a party, the court may allow the action to continue by or against his representative or successor in interest. In case of any other transfer of interest, the action may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action."

The question here is whether bankruptcy is a "disability" as that term is used in the statute, or whether it should be considered as "any other transfer of interest" within the meaning of the last sentence of the section quoted. The judgment held by the bankrupt company against Vickers was such property as passed to the trustee, and the trustee might, with the approval of the bankruptcy court, have been permitted to prosecute in his own name the suit pending thereon. (30 U. S. Stat. at L. p. 549, § 11c.) This statute is permissive. The trustee is not bound to prosecute actions that were commenced by the bankrupt unless ordered by the court in which he is appointed. It has been held that the trustee may in such a case intervene. If he does not, the action does not abate, but may be continued by the bankrupt in his own name. The failure of the trustee to act does not release the defendant in such an action. His right to have the recovery paid to the proper party may be secured by subsequent steps in the action. (*Griffin v. Mutual Life Insurance Company,* 119 Ga. 664; *Mayhew v. Pentecost,* 129 Mass. 332.) This question was considered by the federal supreme court in an action involving similar provisions of the former bankruptcy act, and Mr. Chief Justice Waite in the opinion said:

"By section 5047, Revised Statutes, the assignee may prosecute or defend suits pending in the name of the bankrupt at the time of the bankruptcy, but there is

nothing which renders it necessary for him to make himself a party on the record to do what is thus allowed. . . . The true rule is stated in *Eyster v. Gaff*, 91 U. S. 521; *Burbank v. Bigelow*, 92 U. S. 179; *Norton v. Switzer*, 93 U. S. 355; *Jerome v. M'Carter*, 94 U. S. 734; *M'Henry v. La Societe Francaise &c.*, 95 U. S. 58, and *Davis v. Friedlander*, 104 U. S. 570. These cases, although the bankrupt happened to be a defendant, establish the doctrine that under the late bankrupt law the validity of a pending suit, or of the decree or judgment therein, was not affected by the intervening bankruptcy of one of the parties; that the assignee might or might not be made a party; and whether he was so or not, he was equally bound with any other party acquiring an interest *pendente lite*. It is no defense to the debt that the creditor has become a bankrupt; and if an assignee, after notice, permits a pending suit to proceed in the name of the bankrupt for its recovery, he is bound by any judgment that may be rendered." (*Thatcher v. Rockwell*, 105 U. S. 467, 469.)

(See, also, 1 Rem. Bank. pp. 1010-1015.)

It does not follow, however, that if the court erred in holding that Aultman, Miller & Co. was defunct such error is fatal to the judgment. Adopting the argument of the plaintiffs that the bankruptcy and assignment by the trustee to the Aultman & Miller Buckeye Company should be treated as mere transfers of interest, and that the suit should have been allowed to proceed to judgment in the name of the old company for the use of the new one, and treating the proceedings as having been so conducted, we must necessarily hold that the new company acquired no better rights in the litigation than its predecessor had. From the stipulation filed it appears that Aultman, Miller & Co. was doing business in Kansas without complying with our statutes relating to foreign corporations, precisely as the other companies were doing. It is true that the other companies were given an opportunity to comply with those provisions, but the successor of this company, instead of asking for the same privilege or intimating in any manner its wish to be included in the

leave given to the others, moved for immediate judg-
ment, and then joined in the petition in error with the
other corporations which had expressly declined to
accept the privileges so offered and unites in the argu-
ments made in this court that they could not legally be
required to do so. Evidently it does not desire to com-
ply with the condition offered.

The question relating to the homestead is not very
material, as none of the plaintiffs can recover. In any
event it was a question of fact, and, the evidence being
conflicting, we can not disturb the finding. (*Martin v.
Hoffman*, 77 Kan. 185.) The facts found support the
conclusion reached. (*Shattuck v. Weaver, post.*)

We find no error in the proceedings affecting the sub-
stantial rights of any party. The judgment is af-
firmed.

GRAVES, J., not sitting.