HOBBS v. HEAD & DOWST CO. In re NEW ENGLAND BREEDERS'
CLUB. Ex parte HEAD & DOWST CO.

(Circuit Court of Appeals, First Circuit. January 3, 1911.)

Nos. 873, 896.

1. BANKRUPTCY (§ 215*)—PROCEEDINGS IN STATE COURT—JUDGMENT—VA-
LIDITY.

Where proceedings in the state court to foreclose a mechanic's lien
were continued after bankruptcy of the property owner, and the judgment
was affirmed by the Supreme Court of the state after the bankrupt's
trustee had been heard therein, the judgment would not be regarded as
void by the bankruptcy court on account of the pending bankruptcy pro-
ceedings, though the bankruptcy court might exercise certain revisory
powers in reference thereto.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 215.*]

2. BANKRUPTCY (§ 196*)—DECISION OF STATE COURT—JUDGMENT—REVIEW OF
BANKRUPTCY.

Where an action to foreclose a mechanic's lien was permitted to go
to judgment in the state court notwithstanding bankruptcy proceedings
against the owner of the property, such judgment, when filed as a claim
in bankruptcy, was not reviewable as to minor amounts involved, or as
to whether minor portions of the property were or were not parts of the
parcel to which the lien attached.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 196.*]

3. MECHANICS' LIENS (§ 93*)—CONTRACT—WAIVER OF COMPLETION—QUANTUM
MERUIT.

Where a contractor claiming a lien was prevented from completing a
building as required by the contract by the owner's failure or refusal to
make payments as they matured, according to the contract, the con-
tractor was entitled to sue on the contract for the amount due, and to
foreclose its lien therefor, and was not limited to its remedy on quan-
tum meruit. Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953,
applied.

[Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 93.*]

Appeal from the District Court of the United States for the District
of New Hampshire.

In Bankruptcy. In the matter of the New England Breeders' Club,
bankrupt. From an order denying the petition of Nathaniel W.
Hobbs, trustee, to disallow an alleged mechanic's lien claim, reduced
to judgment of foreclosure in the state court in favor of Head &
Dowst Company, petitioner appeals, and also brings a petition to re-
vise. Affirmed.

See, also, 175 Fed. 501.

Henry F. Hollis, for appellant.

Robert L. Manning, George H. Warren, and Burnham, Brown,
Jones & Warren, for appellee.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

PUTNAM, Circuit Judge. This case relates to an alleged me-
chanic's lien under the statutes of New Hampshire on the real estate
of the New England Breeders' Club, now in bankruptcy. To avoid

all uncertainties, the proponent proceeded both by an appeal and also by a petition to revise under the bankruptcy statutes. There were proceedings in the courts of the state of New Hampshire and in the United States District Court for the District of New Hampshire, which we will describe, concluding in the latter court with the following rescript and decree:

### Opinion of the District Court.
### March 19, 1910.

ALDRICH, District Judge. In view of what appears from the various opinions in the state court in respect to the Head & Dowst Company proceeding, as supplemented by arguments and by the facts found by Burns P. Hodgman, master, I am disposed to accept the result reached in the state court as sufficiently establishing the amount and validity of the Head & Dowst Company lien, and therefore decline to independently consider and adjudicate the local lien question further than to accept as conclusive the result reached in the state court.

The trustee having signified a desire to have my decision in this regard reviewed by the Court of Appeals, I wish, so far as I may properly do so, to send that court all questions of discretion. Pending this review the Head & Dowst Company should not move the state court to perfect its lien.

### Decree.
### March 19, 1910.

At Concord, in said district, on the 19th day of March, A. D. 1910, upon the petition of Nathaniel W. Hobbs, trustee in bankruptcy, filed June 10, 1908, that the alleged lien of the Head & Dowst Company be adjudicated in said District Court, and renewed by motion filed March 15, 1910,

Now, therefore, after hearing arguments of counsel, and after due consideration of the same, and of the facts reported to the court by Burns P. Hodgman, master, It is hereby ordered and decreed that said petition of Nathaniel W. Hobbs, trustee, be and hereby is dismissed and denied.

The alleged lien is based upon a written contract between the bankrupt and the Head & Dowst Company, dated August 31, 1905, for the erection of the buildings on the premises in question here. On December 24, 1906, the contract, on which payments were only to be made on certificates of the architect, with the usual reserve, and on which, at the time, a very considerable amount was awaiting an architect's certificate, was put in suit in the superior court of the state of New Hampshire, for the purpose of enforcing the lien claim referred to; the bankrupt's realty to which the lien related having been properly attached. At that time the entire amount reserved in the contract had been earned, except a matter of about $1,000 for some shutters. It was determined in the suit in the state court that the sum of $46,748.08 had thus been earned, and was unpaid, and judgment was entered for that amount, as we will state further on. There is no claim, and never was any claim, that the Head & Dowst Company was in any way in default, nor any claim that the proper certificates from the architect were not due it, and would not be given it at the time or times provided for by the contract. Except for the matter of the $1,000 and except also for the absence of the architect's certificate, the whole amount reserved by the contract was due and payable at the time the suit was brought.

Immediately preceding or immediately after the suit the bankrupt became actually and notoriously insolvent, and proceedings in insolvency were had in the courts of the state of New Hampshire, by which, on April 15, 1907, Hobbs, the present trustee, was appointed assignee under the insolvency laws of the state. The record shows that the suit was tried without a jury by the presiding judge of the superior court, and that the assignee in insolvency appeared in defense thereof by his counsel, who were present throughout the entire trial, and who defended the action with care, and that, so far as can be observed, a full, complete, and impartial trial was had. There was no substantial variance between the proofs offered in the superior court and those afterwards presented in the District Court as shown by the present record. Certain exceptions were reserved; but, subject to those exceptions, judgment was entered for the Head & Dowst Company in the superior court on December 18, 1907, awarding the amount we have already stated, with a judgment in rem against the real estate attached. Meanwhile, on April 29, 1907, a few days more than four months after the lien suit was commenced, an involuntary petition in bankruptcy was filed in the District Court for New Hampshire against the New England Breeders' Club, which was contested several months, so that an adjudication was not entered until December 31, 1907. It appears, therefore, that during the entire period covering the suit in the superior court, from the time it originated on December 24, 1906, until the judgment on December 18, 1907, there was no representative of any interests in bankruptcy competent to interpose in the litigation in the state court, and no attempt was made by the District Court to interfere therewith until after the judgment was entered. Hobbs was qualified as trustee on the 1st day of February, 1908. He delayed until April 14th, when he filed a petition in the District Court asking that further proceedings in the New Hampshire courts might be stayed, whereupon, on May 15, 1908, a temporary restraining order was issued as follows:

"Temporary Restraining Order.

"May 15, 1908.

"Whereas, in the above cause, a motion for the issuance of a permanent restraining order has been filed and it having appeared that there is danger of irreparable injury being caused to the petitioner before the hearing of said application for the permanent restraining order unless said Head & Dowst Company is, pending such hearing, restrained as herein set forth,

"Now, therefore, take notice that you, the Head & Dowst Company, defendant herein, your agents, servants, attorneys, and counselors, and each of you, are hereby specially restrained and enjoined from taking further action in the suit of Head & Dowst Company v. New England Breeders' Club, now pending in the superior court and the Supreme Court for the state of New Hampshire, to enforce a lien upon the real estate of said New England Breeders' Club, until further order of this court in the premises. I will hear the Head & Dowst Company under special appearance, and without prejudice as to any question of jurisdiction, upon reasonable notice to the other side, upon an application to dissolve this order. It is intended that the party restrained need not necessarily resort to a motion to dissolve, but may at once exercise the right of appeal. In the meantime, and without prejudice to the right of either party, the trustee has leave to co-operate with the Head & Dowst Company with a view of selling the property in dispute, and in case

of sale upon joint consent the proceeds will be safeguarded and held until the rights of the parties are established by law.     Edgar Aldrich,
                                                  "U. S. District Judge.
"Done at Chambers May 15, 1908."

The trustee also filed a petition in the District Court on June 10, 1908, alleging that the claim of the Head & Dowst Company constituted a cloud on the title of the real estate of the bankrupt, praying that the District Court in bankruptcy might adjudicate the validity and amount of its lien if it had any. This petition clearly asked the District Court to take full and independent jurisdiction over the entire topic of the validity and amount of the alleged lien, and it is the alleged refusal of the District Court to do this by its decree of March 19, 1910, which brings the matter to this court in the manner which we have pointed out.

There were other applications to the District Court which we need not refer to except incidentally. There was a reference to a master of August 10, 1909, covering the entire case, which also we need not further state except as hereinafter specially referred to.

When the trustee in bankruptcy was appointed, the case was pending on the exceptions in the Supreme Court of the state of New Hampshire. After the trustee was appointed—that is, on January 6, 1910—the District Court entered the following order, having reference to the restraining order issued on May 15, 1908, which we have already set out, namely:

"The injunction is so far modified as to permit the Head & Dowst Company to go before the proper court of New Hampshire, and take necessary steps to have all questions relating to the amount and validity of the alleged lien upon the bankrupt estate of the New England Breeders' Club determined upon their merits under the New Hampshire law; and the trustee in bankruptcy has leave, and is directed, to make all reasonable effort in the direction of having such questions established by that court. The motion of the trustee that the lien claim be adjudicated by this court is stayed for the present, and will await the result reached in the state court."

Meanwhile the Supreme Court of New Hampshire had made a formal order dismissing the exceptions we have referred to, on the ground that there were no proper responding parties before it; the trustee not having then appeared. But, as we understand the proceedings in that court, as soon as the trustee appeared in accordance with the order of the District Court of January 6, 1910, the Supreme Court restored the case, and heard his counsel. It is evident from the record that counsel for the trustee did make all the efforts required by the order of January 6, 1910, and sought a review by the Supreme Court of the entire merits of the case. The Supreme Court found itself unable formally to do further than consider the exceptions. In this, so far as we understand the New Hampshire practice, the Supreme Court was right. It did, however, hold that all the facts essential to the creation and preservation of the lien had been found for the plaintiff in the superior court.

It is sufficient to say that on the whole we have no reason to doubt that the trial in the superior court was properly conducted and full defense made by the assignee in insolvency. Nevertheless the trustee

in bankruptcy urged upon the District Court that the questions of the amount and validity of the lien had never been fully considered or adjudicated by any court authorized so to do; and he urged on the District Court that it should take up these questions de novo. This as we understand, the District Court by the decree of March 19, 1910, declined to do.

It is true that as to that decree there may be possible claims of interpretations of it in three directions, though to us the third possible interpretation seems, under all the circumstances, to be the correct one. First. It may be claimed that the District Court accepted the conclusions of the state courts as final. Second. It may be claimed that the District Court reviewed the whole case de novo, and intended only to decide that its conclusions on such a review were in harmony with those of the state courts. We do not understand this to be a correct interpretation. Third. It may be that the District Court was of the opinion that, as the proceedings in the state courts affected the disposition of the property of the bankrupt and a determination of the liens existing thereon, the District Court had a right to review it so far as on the face of the record it saw any occasion so to do, in this case placing itself in the substantial position of a court in equity asked to enforce the decree of another court sitting in equity, or of itself sitting in equity at some prior stage of the litigation, where the court so far investigates the proceeding as to satisfy itself that equity will be done in enforcing the prior decree; in other words, that the District Court looked into the proceedings of the state courts so far as to satisfy itself that they were fairly conducted, in accordance with the reasonable and just fundamental rules as to litigated questions, and, finding that they were so conducted, accepted the result as its own. The latter interpretation seems to us to be the reasonable one. Therefore we will first undertake to ascertain the powers of the District Courts in bankruptcy with reference to litigation pending in a state court.

The counsel have not submitted to us their views on the effect of the appearance of the trustee in the Supreme Court; and therefore, as, if that fact has any effect, it would only be to strengthen the result we have reached, we have not considered it.

We are of the opinion that the state courts, under the circumstances, had the right to proceed to the judgment entered in December, 1907. When the superior court assumed jurisdiction, it had undoubted jurisdiction over all the parties interested in the controversy. It did not lose its jurisdiction because those parties subsequently changed. Although, at the time the judgment was entered in the superior court, to which time all subsequent proceedings in the Supreme Court must relate, there was no trustee who in law was authorized to take up the defense, while it may have been within the power of the District Court to restrain further proceedings in the state court until the bankruptcy proceedings had further developed, there was, however, no interference in this direction until after the judgment in the superior court in December, 1907, was entered. Therefore that judgment was valid and effectual, subject perhaps to the right of the District Court after-

wards to review the same on account of the powers given it under the bankruptcy statutes, if such right did exist.

We have seen that exceptions were reserved for the Supreme Court of the state, and that the trustee, in accordance with the order of January 6, 1910, was secured by the Supreme Court an opportunity to be heard thereon. The Supreme Court did pass upon the exceptions, so that, neither as to the superior court nor the Supreme Court, can it be said that the result came from any substantial default.

There can be no question on the general rules of law and the decisions of the Supreme Court of the United States that the judgments of the state courts were not void. By this we mean not absolutely void, postponing for the present the question of the power of the court in bankruptcy to examine into them to some extent. The superior court having had entire jurisdiction over the parties when the suit was brought, it never lost its jurisdiction in the absence of the fact that the parties did not decease, either by natural death as in the case of individuals, or by dissolution as in the case of corporations. Therefore that the judgment was not void on account of the pending proceedings in bankruptcy or the result thereof, in view of the dates we have given, has been settled by a continual series of decisions of the Supreme Court, beginning with Ex parte Christy, 3 How. 292, 11 L. Ed. 603, and Peck v. Jenness, 7 How. 612, 12 L. Ed. 841, coming down through a line of cases cited and reaffirmed in Davis v. Friedlander, 104 U. S. 570, 26 L. Ed. 818, Pickens v. Roy, 187 U. S. 177, 23 Sup. Ct. 78, 47 L. Ed. 128, and other cases which it is not necessary to refer to.

In view of these decisions, it would be impossible to maintain successfully that the result in the District Court appealed against could be questioned, if they represent the ultimate state of the law. Nevertheless this particular case illustrates the necessity of conceding to the courts in bankruptcy a certain revisory power. It was only by the grace of the state Supreme Court that the final judgment was delayed, and a hearing of any kind given the trustee. This is only one illustration of many conceivable cases where a limited revision by a bankruptcy court should justly be permitted. Even in Re Christy, already referred to, at page 314, Mr. Justice Story, speaking in behalf of the court, said that it was demonstrated that Congress did not intend to limit the jurisdiction of the District Court to the class of cases specifically enumerated in the statute, and that its purpose was to bring within its reach all adverse claims.

Likewise the Circuit Court of Appeals for the Fourth Circuit, in New River Coal Company v. Ruffner (decided on December 1, 1908) 165 Fed. 881, at page 885, 91 C. C. A. 559, at page 563, shadows out a general rule in the following language, which has reference to the stay of a suit in the state court, instituted prior to the bankruptcy proceedings:

"It is our opinion that, notwithstanding this action of the state court, the judge of the District Court, sitting in bankruptcy, had full power upon the application of the bankrupt itself, of creditors, or of the trustee, in case one had been appointed, to take such action as in the discretion of the court was necessary for the preservation of the bankrupt estate, the determination

of existing liens, if such there were. and the collection, custody, and distribution of the bankrupt's estate in the manner and to the ends contemplated by the bankruptcy law. In the act forbidding courts of the United States to stay proceedings in a state court, the courts of bankruptcy are specifically excepted, and the bankruptcy law of 1898 (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) expressly confers upon these courts the power to issue injunctions to stay proceedings within this exception."

In the same line the Circuit Court of Appeals for the Eighth Circuit, in Re Dana, 167 Fed. 529, 93 C. C. A. 238, decided on February 23, 1909, in a case where the District Court, acting as a court of bankruptcy, restrained the proceedings in the state court in a suit commenced before the petition in bankruptcy was filed, sustained the jurisdiction. This must have been the view taken by the District Court in the case at bar when it issued its restraining order on May 15, 1908, which we have already described. Without undertaking in all respects to adopt all the phraseology used by Judge Aldrich, we thoroughly commend its general views, and regard them as looking to a result such as we have explained:

"An examination of the state and federal cases decided in the periods covered by the various bankruptcy acts discloses a vast field of discussion, and quite a degree of confusion and conflict, as to the respective powers and duties of the two courts; but, after all, it would seem to be safe to assume that there is no hard and fast rule which requires that all litigation pending in the state courts at the time of the adjudication in bankruptcy in respect to the property of the bankrupt estate shall be left for determination in that forum; neither, as it would seem, is there a hard and fast rule which requires a federal court to draw unto itself all litigation in respect to a bankrupt estate and as to property in the possession of the bankrupt trustee. As the federal bankruptcy law is supposed to be the paramount insolvency law, and as the estate upon adjudication is understood to become an estate in custodia legis, it is quite possible that in the last analysis it might be found (except as to situations within the doctrine of Eyster v. Gaff. 91 U. S. 521 [23 L. Ed. 403], and other cases cited in notes, section 1582, Remington on Bankruptcy) that the right or power to assume the responsibility of all litigation in respect to the assets of the bankrupt estate resides in the federal bankruptcy court. Still, if such extreme power exists, reasonable consideration of comity between the two governments and the two courts, and a reasonable consideration of convenience to suitors, would doubtless, under reasonable judicial discretion, often require that it should not be exercised, and in the great majority of cases would leave local property rights, involved in litigation pending in state courts of general jurisdiction at the time of the adjudication in bankruptcy, to be ascertained and established in the state tribunal as the one most appropriate and best suited to the interests of all parties concerned."

On the other hand, the Supreme Court, in the case covered by our general citation which is most positively expressed, namely, Eyster v. Gaff, 91 U. S. 521, 23 L. Ed. 403, rendered an opinion which, if unqualified, would shut out all jurisdiction of the bankruptcy court in the case at bar. There, however, it said at page 523 of 91 U. S., 23 L. Ed. 403, that the proceedings in the state court were claimed to be absolutely void. The position taken here, either in the District Court or before us, does not go to that extent. Expressions to the same effect as in Eyster v. Gaff are found in Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, and in Louisville Trust Company v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413. Ex-

pressions apparently otherwise are found in Re Watts, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933. Perhaps all can be reconciled by what is found on page 32 of 190 U. S., on page 726 of 23 Sup. Ct. (47 L. Ed. 933) as follows:

"The distinction between the exclusive jurisdiction of the court in bankruptcy, proceeding as it were in rem, to determine the status of a debtor and his assets, and the jurisdiction over property subjected to particular liens, and the like, exercised by courts of concurrent jurisdiction, was probably thought by them not to apply in the circumstances existing here, and advice based on that opinion could not in itself constitute contempt."

Clarke v. Larremore, 188 U. S. 486, 23 Sup. Ct. 363, 47 L. Ed. 555, which relates to the control taken by the District Court sitting in bankruptcy over moneys in the hands of a sheriff collected on execution out of a state court, is not applicable here, because it is settled law that federal and other courts having general equitable jurisdiction may control, under some circumstances, moneys collected by a sheriff, or other proceeds of a judgment, without violating any rules applicable as between different courts while the proceedings in litigation are pending.

However, we need not pursue this topic further, as we are able to affirm the final conclusion of the District Court in any view to be taken of the relations between that court and the local tribunals. As the superior court had original jurisdiction, which was at least not so far divested that any judgment it rendered was absolutely void, and as it was careful at the crucial stage of the proceedings to have before it parties who could, at least informally, represent adverse interests, parties who, in a broad sense, are the same as those now before us, it cannot be fairly claimed that it proceeded against common right, or in violation of any of the fundamental rules of the law. It had sufficient before it to enable it to dispose understandingly of the questions involved. It is certain, therefore, that in no view would we be justified in reviewing its proceedings or determinations with regard to minor matters, like questions of minor amounts involved, or questions whether certain minor portions of the property were or were not parts of the parcel to which the lien attached, all of which are now brought before us by the trustee. There would be no end to litigation if courts in bankruptcy should undertake to revise the proceedings of the state courts in such matters of detail, and no value to the judgments of those courts if the federal courts had jurisdiction to do so, and assumed to exercise it. We, moreover, do not hesitate to declare on the main question presented to us, which was also presented to the state tribunals, that the Head & Dowst Company was substantially entitled to the judgment for the lien claim which it received.

The trustee has with great diligence and much ability cited to us authorities to the effect that the contract for the construction of the buildings on the premises of the bankrupt was never completed, so that the remedy of the Head & Dowst Company was merely on a quantum meruit, for which under the local decisions it is maintained a lien does not lie. None of them require examination by us, because

they are all met by Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, wherein it is held that, after the renunciation of a continuing agreement by one party, the other is at liberty to consider himself absolved from any future performance, and secures a right to recover for all consequences of the breach of it, and that, under such circumstances, the suit is on the contract itself, and not at all on a quantum meruit. We have given so much of the substance of this decision as is necessary to establish our propositions, although independently of it, under the proper understanding of the law as it existed prior to the announcement of Roehm v. Horst, we should apply here the same rule, and hold that, under the circumstances, the Head & Dowst Company had entitled itself to proceed on the contract for the entire amount of the work done by it, and consequently, notwithstanding the decisions cited by the trustee, to maintain its statutory lien for whatever remained unpaid.

Roehm v. Horst was affirmed in The Eliza Lines, 199 U. S. 119, 129, 26 Sup. Ct. 8, 50 L. Ed. 115, though probably it is unnecessary to state this. The application here of the rule announced therein is very simple. Miller, the president of the bankrupt corporation, was for the purposes of this case practically the corporation. He executed the contract sued on, and his authority to execute it was never questioned. The directors met only at infrequent intervals, and the management of the ordinary affairs of the corporation was left in the hands of the president, who, as the case shows, "really had actual charge of the club's business." The record also adds that he was "the man with whom the Head & Dowst Company did its business, and carried on its correspondence." Miller's own testimony was to the effect that his assumption to exercise all the powers of the bankrupt corporation was never objected to. Taking the record as a whole, it is apparent that the entire subject-matter of the work contracted for by the Head & Dowst Company had by acquiescence come under his sole charge. On September 26 and December 14, 1906, the following correspondence between him and the Head & Dowst Company occurred:

"September 26, 1906.

"Messrs. Head & Dowst Co., Manchester, N. H.

"Gentlemen: I have talked with our principal stockholders about paying you in cash as per your request of the twenty-third and twenty-fifth inst., but my efforts have been unavailing. I am afraid that we can do nothing except send you notes in any convenient amounts you may suggest for the amount that Mr. Rice will include in your certificate. I am awfully sorry but I do not see any way of arranging payment.

"Yours very truly,                     Andrew Miller, President.

"December 14, 1906.

"Messrs. Head & Dowst, Manchester, N. H.

"Gentlemen: I beg to advise you that the New England Breeders' Club will not be able to meet the note given you for $28,000, due December 18, 1906, and most respectfully request that you allow us to renew the same under the same term for a period of four months from December 18th, 1906.

"We will be pleased to send you a note at four months in settlement of the balance due you.

"Kindly communicate with the New England Breeders' Club at once.

"Yours truly,                     Andrew Miller, President."

184 F.—27

On December 19, 1906, Miller sent the following telegram to the Head & Dowst Company:

"New York, Dec. 19.

"To Head & Dowst Co., Manchester, N. H.

"Owing to inability to secure the consent of a majority of the creditors of the New England Breeders' Club we will not renew the note given you as per letter written you, the New England Breeders' Club has no funds to meet the note given you.                                    Andrew Miller."

The record shows that there was no question that at this time the New England Breeders' Club was hopelessly insolvent; and on December 29, 1906, its president, Miller, told the attorney of the Head & Dowst Company, who had been sent to him by the Head & Dowst Company regarding its claims, that the former corporation had no funds; that its stockholders had refused to pay in any more money; that the directors would not personally indorse the obligations to the Head & Dowst Company; that they would pay nothing; that the Head & Dowst Company must look to its lien to support its claim; and that this is what he meant by his telegram above quoted. Therefore there can be no doubt that both the state court and the District Court held, and that also we on appeal should hold, that the New England Breeders' Club had abandoned the contract with the Head & Dowst Company, so that the case is fully and clearly within Roehm v. Horst. The consequence is that in any event the Head & Dowst Company was entitled to proceed to enforce its lien for the balance due it, and that in any view the adjudication of the state courts with reference to this, which is the substantial question in the case, cannot be disturbed.

In No. 873, Hobbs, Trustee, Appellant, v. Head & Dowst Company, Appellee, the judgment is:

The decree of the District Court is affirmed, and the appellee recovers its costs of appeal, so far as they can be paid out of the estate in bankruptcy.

In No. 896, Hobbs, Trustee, Petitioner, the judgment is:

The petition is dismissed, and the respondent recovers its costs, so far as they can be paid out of the estate in bankruptcy.