NEW YORK SECURITY & TRUST CO. v. EQUITABLE MORTG. CO.

(Circuit Court, S. D. New York. October 15, 1896.)

1. MORTGAGE BONDS—SALE OF SECURITY—CORPORATIONS.
    A corporation mortgagor, coming into possession of bonds or coupons secured by its mortgage, cannot enforce them against the proceeds of sale of the mortgaged property, where such proceeds are insufficient to pay in full the other outstanding bonds and coupons secured thereby.

2. SAME—ASSIGNMENT—REISSUE.
    If a corporation mortgagor regains possession of past-due obligations, freed from any lien, and assigns without delivering them, such assignment does not constitute a reissue, and the assignee gets only the right, title, and interest of the mortgagor.

This was a suit by the New York Security & Trust Company and others against the Equitable Mortgage Company. The cause was heard on exceptions to the report of a special master. The special master was appointed to take such proof as might be offered by any of the parties to the cause, or by any creditors or stockholders of the Equitable Mortgage Company, concerning its indebtedness, and specially to take proof of the claim of the First National Bank of Candor. The bank claims to be the owner, by assignment from the Natchez Water & Sewer Company, of certain coupons belonging to bonds of that company. The property securing the bonds was sold under a foreclosure, and realized about two-thirds the amount of the mortgage debt and interest.

The Equitable Mortgage Company, owning a majority of the bonds, became the purchaser at the sale, and the coupons in question were proved up, with the bonds and subsequent coupons, as the property of the mortgage company; and that company, without protest or objection from any source, received the distributive share of the proceeds payable upon those coupons. The bank claims the amount thus received by the Equitable Company, on the theory that the coupons were the property of the water company, and were proved up by the Equitable Company under a parol agreement that the amount received thereon should be collected for the benefit of the water company, and that such amount, therefore, constituted a trust fund in the hands of the Equitable Company and its receivers, which the bank, as assignee of the water company, is entitled to follow and reclaim. It is admitted that the bonds were never in the possession of the bank, but have been continuously attached to the bonds which were held and owned by the mortgage company. The mortgage company does not claim the absolute property of the coupons, but insists that they were held by it as collateral for indebtedness which the amount realized from the foreclosure sale was not sufficient to pay. The bank, on the other hand, contended that the coupons, although attached to the bonds and in possession of the mortgage company, remained the absolute property of the water company. The title of the bank is asserted under two written instruments, as follows:

"First National Bank.

"Candor, N. Y. July 31, 1891.

"For value rec'd, I hereby sell and transfer unto the First Nat. Bank of Candor, N. Y., all the coupons, due Nov. 1, 1889, May, 1890, and Nov., 1890, issued by the Natchez Water & Sewer Company, with 125 of its first mortgage bonds, which coupons amount, each set to $3,750, total $11,250, and have all been delivered to the Equitable Mortgage Company. This transfer is intended to carry said coupons and all sums arising therefrom.

"J. F. Thompson."

"The Natchez Water & Sewer Company hereby ratifies the assignment of the Nov., 1889, May & Nov., 1890, coupons of 125 of its bonds, made by J. F. Thompson to the First Nat. Bank of Candor, N. Y., and likewise assigns all its interest in said coupons.     The Natchez Water & Sewer Company,

"By J. F. Thompson, Prest."

All the coupons were overdue and unpaid at the date of the assignment to the bank, and proceedings for the foreclosure of the mortgage securing the bonds were pending, or about to be commenced, with the knowledge of Thompson and the water company. No notice of this assignment was given to the mortgage company until after the foreclosure sale, when the following letter was received by the mortgage company:

"Candor, N. Y. Nov. 17, 1892.

"Chas. N. Fowler, Pt. Equitable Mtg. Co., 40 Wall St., N. Y.—Dear Sir: Some time ago this bank became the owner of the May and Nov., 1890, coupons, attached to 125 of the bonds of the Natchez Water & Sewer Co., and held by you. Please forward to us the judgt. of foreclosure obtained on said bonds, which judgment was obtained in your name.

"Resp., yours,     J. Thompson, Cash."

It appears that the bank was itself owner of $10,000 of the water company bonds, appeared by counsel in the foreclosure suit, but made no claim to these coupons, nor gave any notice of any claim. The master recommended that the claim should be disallowed, and the bank excepted thereto.

William A. McQuaid, for the motion.
Thomas G. Shearman, opposed.

LACOMBE, Circuit Judge. If these particular coupons were included in the security which Post, Martin & Co. took as collateral for their advance, and which security the Equitable Mortgage Company subsequently purchased from the pledgee, the First National Bank of Candor has no title to them. If the Natchez Water Company did not pledge them, or if the pledgee subsequently released them from the pledge, and did not sell them to the mortgage company, then they became simply unissued promises to pay of the water company, which happened to be kept, not in their own office, but in the convenient custody of a third person. It would, in such case, have been quite competent for the water company to issue them to any one who chose to give value for them; and when so issued they might, perhaps, become valid obligations of such company, and property in the hands of the person to whom they were issued. But this was not done. The water company never issued them to the bank, nor to any one else. They remained continuously in the custody of the mortgage company. At no time subsequently to their release from the lien of the Post, Martin & Co. loan (assuming they were thus released) did they pass into the hands of any bona fide holder for value. The transaction between the water company and the bank certainly was not such an issuance of the coupons, even waiving any question as to what rights would pass to the purchaser from a corporation of its overdue obligations. The most that was done was to assign to the bank all the water company's right, title, and interest in the unissued coupons. As to what such right, title, and interest was, the special master was entirely right in his finding that the Natchez Company, holding the coupons free from any pledge, would "not be entitled to share in the proceeds of sale under foreclosure, since it cannot * * * be successfully maintained that a mortgage debtor, having become possessed of bonds or coupons secured by its mortgage, can enforce them against the proceeds of sale of the mortgaged property, where such proceeds are insufficient to pay in full the other outstanding bonds and coupons secured thereby. * * * The coupons [in question] were not entitled to share in the proceeds of sale of the mortgaged property, as against the holders of the other bonds and coupons, who were not paid in full."

There is nothing in the suggestion that the receivers of the mortgage company cannot be heard to make this objection to the claim of the bank or its assignee, by reason of the fact that, under decree of court in the foreclosure proceedings, these very coupons

did share in the proceeds of the sale of the mortgaged property. It is apparent from the record before the special master that it is a disputed question of fact whether or not the coupons in question were originally taken by the mortgage company as collateral security, and thus eventually became its property. Presumably, the court which made the decrees in foreclosure reached that conclusion. It certainly cannot be assumed that it held coupons to be entitled to share in the proceeds, when such coupons had been returned to the debtor company free from any lien, and never reissued by it to any one. The exceptions are overruled.