### CRAWFORD v. WASHINGTON NORTHERN R. CO. et al.

(Circuit Court of Appeals, Ninth Circuit. May 8, 1916.)

#### No. 2723.

1. CORPORATIONS ☞480—MORTGAGES—PRIORITY OF LIENS.

By the terms of mortgages simultaneously executed by a timber company and a railroad company, securing bonds covering the same indebtedness, it was provided that payment of one of the timber company's bonds should operate as payment of one of the bonds of the railroad company, which should then be canceled or surrendered uncanceled at its option. The mortgage of the railroad company also covered all its after-acquired property. Later the two companies joined in another mortgage, by which, in addition to the property covered, they pledged the bonds of the railroad company "as they are from time to time released and delivered," under the terms of the first mortgages. The later mortgage was expressly made subject to the prior mortgages, which were recited therein. *Held*, that the pledge gave to the later mortgagee no present right in such bonds, but only entitled him to have the same reissued to him if and when they might be surrendered, and that even then they would be subject to the lien of the first mortgage under its after-acquired property clause.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. ☞480; Mortgages, Cent. Dig. §§ 307–312.]

2. CORPORATIONS ☞480—MORTGAGES—PRIORITY OF LIEN—ESTOPPEL OF SECOND MORTGAGEE.

A second mortgagee of a corporation, whose mortgage was expressly made subject to a prior mortgage, cannot defend against such mortgage because of transactions occurring before the execution of the second mortgage, by which it is claimed that a part of the proceeds of the

bonds secured by the first mortgage was used by the mortgagor in violation of the agreement under which they were issued and for a purpose which was ultra vires.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. ⊙══480; Mortgages, Cent. Dig. §§ 307–312.]

3. EQUITY ⊙══148(1)—JOINDER OF CAUSES OF ACTION.
A bill for the foreclosure of two mortgages *held* not multifarious, but within equity rule 26 (198 Fed. xxv, 115 C. C. A. xxv), which permits the joinder of causes of action when it will promote the convenient administration of justice.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 341–351; Dec. Dig. ⊙══148(1).]

Appeal from the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Suit in equity by the Mississippi Valley Trust Company and the Union Trust Company against the Washington Northern Railroad Company, the Oregon-Washington Timber Company, the Blazier Timber Company, and William W. Crawford, trustee. From the decree, Crawford, trustee, appeals. Affirmed.

See, also, 212 Fed. 776.

On June 4, 1910, the Oregon-Washington Timber Company, hereinafter called the Timber Company, placed two mortgages on 10,800 acres of timber lands which it owned in Skamania county, Wash., a first mortgage of $600,000, and a second mortgage of $400,000. The Mississippi Valley Trust Company was the trustee of both mortgages. Thereafter the Union Trust Company of Detroit became, with that company, a cotrustee of the first mortgage. The Washington Northern Railroad Company, hereinafter called the Railroad Company, owned a logging road running to the timber lands owned by the Timber Company. Both companies were owned and controlled by substantially the same stockholders. On June 4, 1910, the Railroad Company executed a mortgage in the sum of $1,000,000 to the Mississippi Valley Trust Company. The debts secured by all three mortgages were evidenced by bonds of $1,000 each, and the mortgages made by both the Timber Company and the Railroad Company were given to secure the same debt, and there was a provision in the mortgages of the Timber Company that payment of one of the bonds of that company should have the effect to pay one of the bonds of the Railroad Company, which latter bond might be canceled or surrendered uncanceled to the Railroad Company at its option. On June 4th the Timber Company proposed to the Railroad Company to purchase all of that company's bonds and to pay therefor $400,000 of the Timber Company's second mortgage bonds and $540,000 in money, the money to be used for the following purposes: $150,000 for the retirement of a first mortgage then outstanding on the Railroad Company's property, $125,000 to pay the present floating indebtedness of a company of which the Railroad Company was the successor, $215,000 for extensions and betterments and equipment to the railroad property, and $50,000 to be loaned to the Timber Company on its note; and it further proposed to pledge to the Railroad Company $400,000 of the bonds so to be purchased as security for the payment of the $400,000 second mortgage bonds of the Timber Company. The proposition was accepted, and the contract was entered into. The stockholders of both the Railroad and Timber Companies were at that time substantially the same. Thereafter the parties in control of those two companies organized the Blazier Timber Company, which acquired some additional timber lands, and on March 1, 1912, that company executed a mortgage to Crawford, trus-

⊙══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tee, to secure nominally $425,000, the actual consideration being $300,000, in which mortgage the Railroad Company and the Timber Company joined, thereby giving to Crawford a first lien on the property of the Blazier Company and a second lien on the property of the Timber Company, and, as found by the court below, a second lien on the property of the Railroad Company.

In the following year the Trust Companies brought a suit to foreclose both the first mortgage of the Railroad Company and the first mortgage of the Timber Company, and Crawford, trustee, filed a cross-bill to foreclose his mortgage and answering the bill of complaint interposed two affirmative defenses, which, on motion of the Trust Company, were ordered to be struck out. The first portion so struck out is in substance the following: That $175,000 of the cash paid by the Timber Company was not devoted to the purposes specified in the contract, but was used to acquire additional timber lands for the Timber Company, and $100,000 was paid out for logging equipment and camps of that company, and that this diversion of funds was made, under the direction of a syndicate which acquired $600,000 of the first mortgage bonds, and $300,000 of the bonds represented by the trustees in the suit; that both the members of the syndicate and the Trust Company knew at the time of the purchase of the purposes to which, by the agreement between the parties, the $510,000 cash was to be applied; that a large portion of said bonds are still held by the members of the syndicate; that the Railroad Company was without power under its charter to issue bonds for the purchase of lands for the Timber Company, or for the building of camps and procuring of logging equipment for that company, and that the money so expended for those purposes was paid out by the Trust Company on the direction of the syndicate, the present holders of the $570,000 first mortgage bonds of the Timber Company, represented by the complainants in the suit, and that the syndicate are the holders of more than $300,000 of said $570,000 first mortgage bonds; that the complainants are estopped from sharing in the proceeds of the sale of the bonds of the Railroad Company, or the property of the Railroad Company, to the extent of said sum of $275,000, which was at their instance diverted from the proceeds of the sale of the first mortgage bonds of the Timber Company, and that none of the complainants ought in equity to be permitted to share in the proceeds of the sale of the bonds of the Railroad Company, or the sale of the property of the Railroad Company.

The second portion of the answer which was so struck out is in substance the following: In February, 1911, the Blazier Timber Company was incorporated. Thereafter the two timber companies and the Railroad Company authorized the execution by those three companies of two series of notes; series A to consist of $100,000 joint collateral trust notes, and series B to consist of $150,000 joint collateral notes. The notes were secured by indenture of the three companies to the Mississippi Valley Trust Company, to which trustee the Blazier Timber Company conveyed all its property, and the Railroad Company assigned the $400,000 second mortgage bonds of the Timber Company and $400,000 of its own first mortgage bonds, deposited as collateral security for those of the Timber Company. That the proceeds of series A notes were used as authorized, but that series B notes were delivered to the syndicate for the purchase of the Railroad Company's stock sold to the syndicate with the first mortgage bonds of the Timber Company. That the stock was not sold to the companies, or either of them, but to Blazier individually. That $150,000, the amount of these notes, has been paid to the members of the syndicate by the Railroad Company and the Timber Company, thereby diverting unlawfully the funds of the timber companies.

The appellant set forth these transactions as a payment upon and as an offset against the $570,000 of bonds on which the suit was brought, and prayed for an accounting of the funds, and that the members of the syndicate be brought into the suit, and that they be denied the right to participate in the proceeds of the sale upon foreclosure. On March 4, 1915, a final decree was entered foreclosing the first mortgage of the Railroad Company, and the first mortgage of the Timber Company, and the mortgages executed to Crawford, trustee. From that decree Crawford appeals.

Kerr & McCord, of Seattle, Wash., for appellant.

Snow & McCamant, of Portland, Or., and Huffer & Hayden, of Tacoma, Wash., and Edward C. Wright, of Kansas City, Mo., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] By the decree the court below postponed the right of the appellant to share in the proceeds of the railroad property until after the payment in full of the appellees. The court ruled that such was the effect and intention of the appellant's mortgage. The court also reached the same conclusion under the "after-acquired property" clause of the railroad first mortgage, holding that thereby the $400,000 group of bonds of the Railroad Company became a part of the appellee's security from and after the time when the Railroad Company became the owner of those bonds as collateral security for the second mortgage bonds of the Timber Company. We think the decree may be sustained on either ground. The appellant's mortgage contains the express recital that the property of the Timber Company so mortgaged to him is subject to the lien of the first and second mortgages of June 4, 1910, and that the property of the Railroad Company, so mortgaged to him, is subject to the lien of the mortgage made by that company of June 4, 1910; and the appellant admits in his answer that his mortgage embraces all of the property described in the mortgages of the Timber Company and the Railroad Company of June 4, 1910, and recognizes the priority of those mortgages.

But the appellant contends that when he acquired by his mortgage a pledge of $400,000 of the second mortgage bonds of the Timber Company, which were then secured to the Railroad Company by $400,-000 of the first mortgage bonds of the latter company, the latter bonds so pledged to secure the former were negotiable instruments which he acquired in good faith as an innocent purchaser, and that therefore he was entitled to a first lien on the property mortgaged to secure the same. But the appellant did not become, by reason of the transactions set forth, either a holder or a purchaser of those bonds. They were never at any time in his possession, and he will acquire nothing under the pledge thereof until the bonds shall have been actually paid and surrendered and reissued by the Railroad Company, as contemplated by the antecedent agreements and instruments. They were assigned to secure him only after they had been surrendered from time to time under the terms of the first mortgage, and there is nothing to show that it was the intention of the contracting parties that the bonds, if paid and surrendered, should be reissued with even rank with the bonds still outstanding and unsurrendered. At the time when the suit was brought, they were still in the possession of the appellees, and were still held to secure the debt which was owing to them. In the appellant's mortgage is the provision that the Railroad Company pledges the $400,000 second mortgage bonds of the Timber Company, and the whole issue of the first mortgage bonds of the Railroad Company, "as they are from time to time released

and delivered" by the Trust Company under the terms of the first and second mortgages of the Timber Company, and there is also the provision that the Timber Company pledges to the mortgagee all its right, title and interest in and to its $400,000 second mortgage bonds, and also the bonds of the Railroad Company "as they are from time to time released and delivered" under the terms of the first and second mortgages of the Timber Company. The appellant was given no special pledge of the last 400 or of any particular portion of the Railroad Company's bonds; and the plain import of the provisions is that he took no present right in said $400,000 of first mortgage bonds of the Railroad Company, but took only the right to receive bonds of that company if and when they should be reissued, after the payment, release, and delivery of the same as provided in that company's original mortgage. Upon such reissuance such bonds would clearly have been subsequent in rank to the outstanding unpaid first mortgage bonds of the Railroad Company. New York Security & Trust Co. v. Equitable Mortg. Co. (C. C.) 77 Fed. 64. But that stage of the proceedings had not been reached at the time of the foreclosure suit, and the appellant was but the recipient of a conditional promise that the bonds, when paid and released, should be reissued to him. The appellant, to support his contention that the last 400 bonds of the Railroad Company were freed from the lien of the debt to the appellees, points to the collateral agreement of January 30, 1911; but we discover nothing in that agreement to show that the members of the syndicate, so called, ever waived or intended to waive any of their rights to the securities which they held.

[2] On the assignment of error that the court struck out portions of his answer the appellant argues that at the time when he took his mortgage he had no knowledge of the diversion of the Railroad Company's funds alleged in his answer, and that such diversion of funds could not have been accomplished, except through the active assistance of the Mississippi Valley Trust Company, and that the $300,000 bonds so held by the syndicate who brought about the diversion are not held by innocent purchasers or acquired in the ordinary course of business, and that the complainants in the foreclosure suit are merely representatives of these bondholders; that the $540,000 cash paid on the contract of June 4th was a trust fund in the hands of the Mississippi Valley Trust Company, but a portion of it was diverted from its proper use by the collusive and fraudulent acts of that company and the syndicate holders of the $300,000 of the bonds, in violation of the fiduciary relation which the Trust Company and the syndicate were bound to observe. The appellant admittedly took his mortgage expressly subject to the mortgage given by the Railroad Company, and also expressly subject to the mortgage of the Timber Company. The bonds in question have at all times been in the custody of the Mississippi Valley Trust Company. The appellant acquired no rights before March 1, 1912, the date of his mortgage, and subsequent to the time when the transactions so struck from the answer occurred. Those transactions cannot be held to create a defense to the foreclosure suit. If the allegations were true, they show that a debt is owing by the

Timber Company to the Railroad Company, and with the accompanying right on the part of the latter company to charge the property purchased for the Timber Company with that debt. The court below held properly, we think, that the matter so alleged, being essentially an allegation of ultra vires, was not available to the appellant whose debt had not then been created. Again we think the transactions as alleged amount to a set-off or counterclaim which the Railroad Company has its option to assert. Gillespie v. Torrance, 25 N. Y. 306, 82 Am. Dec. 355; 34 Cyc. 758. The appellant holding a subsequent mortgage, is in no position to assert it. He well knew when he took his mortgage that the bonds under the prior mortgages had been issued and negotiated. Bronson v. La Crosse Railroad Co., 2 Wall. 283, 17 L. Ed. 725; Jerome v. McCarter, 94 U. S. 734, 24 L. Ed. 136. Upon those bonds the total amount agreed to be paid between the parties for the bonds has been actually paid and has been received by the mortgagor. The allegations struck from the answer relate to matters which cannot be adjusted in the present suit. They concern the companies which participated in them, but they give the appellant no cause of suit.

[3] We find no merit in the contention that the bill should have been dismissed for multifariousness, in that it was brought to foreclose two mortgages in a single suit. The Twenty-Sixth equity rule (198 Fed. xxv, 115 C. C. A. xxv) permits a plaintiff to join in one bill as many causes of action cognizable in equity as he may have against a single defendant, but provides that if there be more than one defendant, there must be either the assertion of liability against all of the material defendants, or "sufficient grounds must appear for uniting the causes of action in order to promote the convenient administration of justice." The present case is, by the allegations of the bill, brought clearly within the provisions of the rule. The bill alleged that both mortgages were given to secure the same debt, and that the Timber Company's mortgage provided that, when the bonds secured thereby should be paid and canceled by the trustee, a like amount of the Railroad Company's bonds should also be canceled or delivered to the Railroad Company uncanceled. Under the facts alleged, the rights of the parties could be adequately protected only in a single suit.

Nor do we find error in the allowance which the court below made for attorney's fees. That feature of the decree was based on the testimony of one witness, an attorney, together with the stipulation of the parties to the suit that other attorneys of high standing at the bar would be deemed to have testified to the same effect, and no testimony was offered to the contrary. Under these circumstances, we would not be justified in disturbing the award.

We find no error. The decree is affirmed.