### JEROME v. McCARTER.

1. Prior mortgagees are not necessary parties to the bill of a junior mortgagee, which seeks only the foreclosure or the sale of the equity of redemption.
2. Neither the mortgagor nor his assignee in bankruptcy can object to the order in which the priority of valid and subsisting liens on the mortgaged premises is fixed by the decree of foreclosure.
3. The subsequent bankruptcy of the pledgor of a negotiable instrument does not deprive the pledgees of their right to dispose of it upon his default.
4. An objection that leave was not given to file the bill of foreclosure, — the mortgaged premises being at the time in the possession of a receiver appointed in a former suit in the same court, — if, under any circumstances, available, will not be sustained, if made a year and a half after the bill was filed, and when the party objecting had in the mean time appeared, answered it, and cross-examined the witnesses of the complainant.

APPEAL from the Circuit Court of the United States for the Eastern District of Michigan.

The case is fully stated in the opinion of the court.

Argued by *Mr. Matt. H. Carpenter* and *Mr. George Norris* for the appellants.

*Mr. George F. Edmunds* and *Mr. Alfred Russell, contra.*

Mr. JUSTICE STRONG delivered the opinion of the court.

There are no less than twenty-seven assignments of error in this case, but the subjects of real controversy are few. The bill is an ordinary one for the foreclosure of a junior mortgage covering the canal and franchises of the Lake Superior Ship Canal, Railroad, and Iron Company, and covering also two separate bodies of land, each containing two hundred thousand acres. The mortgage was given expressly subject to two prior

mortgages, one, dated July 1, 1865, upon the canal and one of the bodies of land,, and the other, dated July 1, 1868, upon the canal and the other body of two hundred thousand acres of land. Each of these prior mortgages was made to secure the payment of the company's bonds of even date therewith, amounting to the sum of $500,000 ; and all the bonds were issued, and they are now outstanding. The first of these prior mortgages is known as the Sutherland mortgage. Default having been made in the payment of interest upon the bonds secured by that, John L. Sutherland, the trustee, filed his bill to foreclose it, making all the subsequent mortgagees parties ; and they all appeared. In that case, Isaac H. Knox was appointed receiver of all the property covered by the several mortgages, and subsequently, in order to obtain the money necessary for completing the canal by order of the court, he was authorized to create, issue, and sell certificates of indebtedness to the amount of $500,000, to be secured by a mortgage, which he was empowered to make, covering all the property, and which was to be prior in right to all other mortgages. Pursuant to this authority, the receiver did issue and sell such certificates, and for their security executed the mortgage directed by the court. These certificates are now all outstanding.

Such was the condition of affairs when the present bill was filed. But the company having afterwards gone into bankruptcy, a supplemental bill was exhibited making the assignees in bankruptcy parties defendant; and they appeared and made defence, and they are the only parties appellant.

It is now contended, on their behalf, that the bill cannot be sustained, because the prior mortgagees were not made parties. This position cannot be sustained. It is undoubtedly true there are cases to be found in which it was ruled that prior incumbrancers were necessary parties to a bill for the foreclosure of a junior mortgage, but in most of these cases the circumstances were peculiar. Where the effort of the junior mortgagee is to obtain a sale of the entire property or estate, and not merely of the equity of redemption, there is reason for making the prior incumbrancers parties, for they have an immediate interest in the decree. And so, when there is sub

stantial doubt respecting the amount of the debts due prior lien creditors, there is obvious propriety in making them parties, that the amount of the charge remaining on the land after the sale may be determined, and that purchasers at the sale may be advised of what they are purchasing. But the case in hand has no such peculiarities. The prior mortgages were not due when this bill was filed; and, without the consent of those mortgagees, nothing more than the equity of redemption could be sold under any decree made in the case, or under the decree which was sought. Nor is there any doubt entertainable respecting the amount due under the prior mortgages. Indeed, the company is estopped by the provisions of its mortgage, of which the complainant is trustee, from asserting that the entire amount of the two $500,000 mortgages, and of the receiver's mortgage, was not outstanding when the present mortgage was made. The full indebtedness was acknowledged by making the junior mortgage expressly subject to it, and as there is no evidence that any portion of it has been paid, it is not admissible for the mortgagors or their assignees in bankruptcy to deny it now. *Bronson* v. *The LaCrosse & Milwaukee Railroad Co.*, 2 Wall. 283.

Apart from the exceptional cases, we understand the general rule to be, that, in a suit by a junior mortgagee to foreclose a mortgage, prior mortgagees are not necessary parties. So it has been held in England in *Rose* v. *Page*, 2 Sim. 471; *Richards* v. *Cooper*, 5 Beav. 304; *Delabere* v. *Norwood*, 3 Swanst. 144.

Such, also, is the rule asserted in this country, where the bill of a junior mortgagee, as in this case, seeks only a foreclosure or sale of the equity of redemption. Edwards on Parties, p. 91, and cases cited; *Gihon* v. *Bellville*, 3 Halst. (N. J.) Ch. 531; *Williamson* v. *Probasco*, 4 id. 571.

The subject has been under consideration by this court in *Hagan* v. *Walker et al.*, 14 How. 37, in which it was shown that it is not necessary in all cases to make a prior mortgagee a party. And it is not easy to see why it should be in any case, when the decree asked cannot injure or affect him. In *Payne* v. *Hook*, 7 Wall. 432, it was said, " It can never be indispensable to make defendants of those against whom nothing is alleged, and from whom no relief is asked." See also *French* v.

*Shoemaker*, 14 Wall. 315. We think this is the correct rule. It is certainly consonant with reason, and we see nothing in the present case that justifies a departure from it. We hold, therefore, that the bill is not defective for want of proper parties.

The appellants next contend that the decree is erroneous, because the mortgagors were declared bankrupt after the bill was filed, and before the decree was entered; and it is urged that the bankrupt court had absolute and exclusive jurisdiction, and was entitled to the entire administration of the bankrupts' property. That this objection is without merit was shown in *Marshall* v. *Knox*, 16 Wall. 551, and *Eyster* v. *Gaff et al.*, 91 U. S. 521, to which we need only refer.

A further objection insisted upon is, that while the property was in the charge of a receiver appointed in the suit brought by Sutherland to foreclose the first mortgage, and therefore, as it is said, was *in custodia legis*, this bill was filed without leave of the court. If there could, under any circumstances, be any force in this objection, there is none now. Both suits were brought in the same court; these appellants appeared, answered, and cross-examined witnesses, and made no allegation that the suit had been brought without leave until about a year and a half afterwards. It was then too late. They must be held to have acquiesced; and, if not, leave of the court to commence and prosecute the suit must be presumed after the orders made to facilitate its progress.

The only remaining assignments of error that require particular notice relate to the ascertainment of the liens on the property of the company anterior to the mortgage now in suit, to the determination of their relative priority, and to the adjudication of the amount of the debt for the payment of which that mortgage is a security. The court decreed not only that the two five hundred thousand dollar mortgages, one dated July 1, 1865, and the other dated July 1, 1868, are liens for the full amounts specified in them, and prior in right to the complainants' mortgage, but that the lien of the mortgage given by the receiver appointed in the suit of Sutherland against the company, in pursuance of the direction of the court in that case, is also a prior lien to the extent of the certificates issued by the receiver; namely, to the extent of $500,000 and interest. This portion

of the decree, it is now insisted, was erroneous. But if the receiver's certificates, issued by order of the court which had the property in charge, are liens at all, what have the appellants, who stand in the place of the company, to do with the order of priority of liens? What difference does it make to them whether the certificates be paid before any other liens are discharged, or after all the debts secured by any mortgage shall have been satisfied? The assignees can get nothing until all the liens on the assigned property have been removed. If the Circuit Court has made a mistake in determining in what order the incumbrances are entitled to payment, that is a matter for the consideration of the incumbrancers, in which neither the company nor the appellants have any interest. We do not understand the appellants to contend that the entire sum of $500,000, for which the receiver's certificates were issued, is not due, or that the receiver was not authorized to make the issue and secure it by mortgage, as he did. This is admitted in the pleadings, and there is positive proof of it in the record. It would be superfluous to spend much time in considering the power of the court to confer the authority upon its receiver that it attempted to confer. As a court of equity, having the mortgaged property in charge, it was its plain duty to preserve it, not only for the benefit of the lien creditors, but also for the benefit of the company whose possession the court had displaced. Under the provisions of the acts of Congress granting the lands covered by the mortgages, the lands reverted to the United States, unless the ship canal should be finished within a fixed period, and that period was passing away when the order was granted to the receiver to raise money for completing the canal by the issue of certificates secured by his mortgage. The canal was unfinished, and there were in the receiver's hands no funds to finish it. Hence there was a necessity for making the order which the court made, — a necessity attending the administration of the trust the court had undertaken. The order was necessary alike for the lien creditors and for the mortgagors. Whether the action of the court could make the receiver's mortgage superior in right to the mortgages which existed when it was made, it is needless to inquire. None of the creditors secured by those other mortgages objected to the order when it was

made, though they were all then in court.  None of them object to its lien or its priority now.  And we think the appellants, either as representatives of their assignors, or of general creditors, cannot be heard to object.  Beyond doubt, they would not be entitled to a return of the property discharged from liability for the receiver's certificates remaining unpaid, even if all the other mortgages were satisfied.  As against them the certificates are certainly charges upon the property, and they have, therefore, no right to complain of the decree, which gives the certificates priority to other liens.

That all the bonds secured by the first two mortgages are outstanding and due, is, we think, an established fact.  We have observed that the mortgage upon which the present suit has been brought was made subject expressly to those two prior mortgages.  In it the mortgagors recited that the company did, simultaneously with those mortgages, " execute, issue, negotiate, and sell " all the bonds covered thereby, and declared that they were an outstanding and subsisting lien.  How can these appellants, who stand in the shoes of the mortgagors, be heard to deny these recitals?  Yet, if they can, we find no evidence that all those bonds are not now a subsisting debt of the company to the full extent of the sums named in them.  There is some proof that, when the company became bankrupt (Aug. 28, 1872), some of the bonds were held as collaterals for loans made to the company smaller in amount than the bonds pledged.  But the bonds were subsequently sold by the pledgees, and the present holders hold them by absolute right.  The position that the pledgees could not sell the pledge after the adjudication in bankruptcy, is quite untenable.  It is sustained by nothing in the Bankrupt Act.  The bonds were negotiable instruments.  They passed by delivery, and even were there no expressed stipulation in the contracts of pledge, that the pledgee might sell on default of the pledgor, such a right is presumable from the nature of the transaction.  Certainly the Bankrupt Act has taken away no right from a pledgee secured to him by his contract.

In regard to the bonds covered by the McCarter mortgage, which is the one now in suit, we find no error in the decree of which the appellants can complain.  Most of those bonds,

though at first issued as collaterals for loans made to the mortgagors, have been sold, and they are now owned by the purchasers. There are some, it is true, that are still held in pledge ; but the pledgees have a clear right to use them, either by sale or by collection, until the full amount of the debts due from the mortgagors is satisfied. We cannot close our eyes to the patent fact that the entire property mortgaged is insufficient to pay the debts with which it is incumbered. The holders of the bonds covered by the Union Trust Company will obtain nothing, and none of the bondholders under the McCarter mortgage will obtain full payment. At least, such is the strong probability. If, therefore, the holders of the McCarter bonds, who hold them as collaterals, are allowed to hold them only for the sums for which they have been pledged, the bonds may, and probably will, prove an insufficient security for the debts actually due from the obligors to the holders. They will prove insufficient, unless the mortgaged property shall bring at the sale enough to pay in full all the bonds held by purchasers, and also all the debts for which the pledged bonds are held. If the sale produces less, there must be a ratable abatement. On the other hand, if the pledgees are allowed to prove the bonds held by them for their full face, these appellants are not injured. If, at the sale, the mortgaged property shall bring more than sufficient to pay the debts for which the bonds are held in hypothecation, the proceeds of the sale will be under the control of the Circuit Court, and it will take care that a proper distribution is made. And if this were not so, the pledgees would hold any excess they might receive in trust for other incumbrancers, or for the appellants. The only persons, if any, who can possibly be injuriously affected by the decree which was made, are the absolute owners of the McCarter bonds, and they acquiesce in it. It is not for those who are not injured to complain.

Of the only other assignment of error which requires notice, it is sufficient to say, that, in view of the circumstances of the case, a sale in bulk is the only possible mode of sale which will enable purchasers to buy with confidence. And a sale by parcels, though ordinarily the proper mode, cannot be made, with any hope of justice to the creditors.      *Decree affirmed.*