WILLIAM YOUNG v. ISAAC M. CARDWELL et al.

1. TRUST CONVEYANCE. *Delivery. Presumption. of acceptance.* Where a trust conveyance is shown to have been written by the trustee, proved and registered, and accepted by the principal beneficiary, proof of a formal delivery of the deed is unnecessary, and the presumption of acceptance would be sufficient to sustain the deed in the absence of any evidence to the contrary.

2. CHANCERY PLEADINGS AND PRACTICE. *Assignee in bankruptcy.* An assignee in bankruptcy of the grantor of an assignment for the benefit of creditors, who is appointed during the pendency of proceedings for the foreclosure and sale of the trust property, stands like any other purchaser *pendente lite,* and must make himself a party to the suit if he wishes to assert his rights, and upon his failure so to do, the cause will proceed as if no assignment in bankruptcy had ever been made.

3. SAME. *Discharge in bankruptcy.* A personal judgment in such a case against the bankrupt, who pleads his discharge, would be erroneous.

4. SAME. *Writ of error. Supersedeas.* The pending of a writ of error without a supersedeas, would be no ground for excepting to the re-report of a sale of land under a decree.

5. SAME. *Sale of land. In whole or in parcels. Discretion of clerk and master.* Where the decree leaves it to the discretion of the master whether he will sell land in one or more parcels, a sale by him of the land in one body, for an amount not exceeding the debt and costs charged on it, will not be interfered with, no abuse of his discretion being shown, and it appearing that the debtor tendered no plan for a sale of the land in parcels.

## FROM SMITH.

Appeal from the Chancery Court at Carthage. W. G. CROWLEY, Ch.

E. L. GARDENHIRE for complainant.

A. A. SWOPE and J. J. TURNER for Defendants.

COOPER, J., delivered the opinion of the court.

The defendant, Isaac M. Cardwell, being indebted to the complainant, William Young, in several items, and among others, in a note for $200, given to H. W. Hart for a horse and by him transferred to Young, went to Young, and, on May 24, 1866, consolidated the indebtedness in a single note, and on the 29th of May, 1866, secured the amount, together with several other demands due to third persons, by a conveyance of property, real and personal, to H. W. Hart, as trustee with power of sale. The trust deed seems to have been delivered to Hart, who wrote it, and was proved and registered, but Hart never took pos-

session of the property nor gave bond for the faith-ful performance of the duties of trustee.

The present bill was filed on the 10th of August, 1871, to foreclose this trust conveyance, making Cardwell, Hart and two of the beneficiaries mentioned in the deed, parties defendant.

The bill stated that all of the other debts secured had been paid by Cardwell, and suggested that the claims of the two creditors made defendants might also have been paid. One of these creditors afterwards, in open court, admitted that his debt had been paid by Cardwell, and the other formally, in writing, disclaimed all interest in the trust. And Cardwell, in his answer, asserted that all the debts intended to be secured by the trust had been paid except the debt of the complainant, which he admitted except a small item proved, and another item of mistake in the interest, which was corrected on the final hearing. He intimates that the conveyance was made with a fraudulent intent, but this is disproved by evidence, and would not prevent, even if established, the execution of the deed between the parties.

The defendant Cardwell insisted in his answer that the note for $200 given to Hart was made in consideration of the purchase of a horse, to be used by his son in the Confederate service, which object was known to Hart at the time. The proof shows that Hart did not make the sale of the horse with the intent of aiding in the illegal purpose of Cardwell; and mere knowledge, it has often been held, that the property sold was to be used for the unlawful pur-

pose, would not avoid the contract: *Henderson* v.
*Waggoner*, 2 Lea, 133; *Puryear* v. *McGavock*, 9
Heis., 461.

It is argued that the title to the property con-
veyed in trust never passed to Hart. This argument
is vested partly on the want of proof to show a de-
livery of the deed and acceptance of the trust, and
partly on the fact that the trustee never gave bond
and qualified as required by law to execute the trust:
Code, sec. 1974. But the trust conveyance was writ-
ten by Hart, and the testimony leaves no doubt that
it was accepted both by him and Young for the pur-
poses mentioned therein, and the presumption of ac-
ceptance would be sufficient in the absence of proof
to the contrary. He never took possession of the
property, nor qualified as trustee under the statute.
But the validity of the trust is not affected by the
failure of the trustee to take possession of the prop-
erty; nor is the title to the property, which has passed
to the trustee by the acceptance of the deed, divested
by the failure of the trustee to qualify.: *Mills* v.
*Haines*, 3 Head, 332; *Vance* v. *Smith*, 2 Heis., 343;
*Williams* v. *Gideon*, 7 Heis., 618; *Ferriss* v. *Eichbaum*,
4 Baxt., 70.

Pending the suit, in the year 1873, Isaac M. Card-
well filed his petition in bankruptcy, and was declared
a bankrupt, receiving his discharge from debts prova-
ble at the time of his application. By leave of the
court, he afterwards filed a plea setting up his dis-
charge as a bar to any personal judgment.

It is now argued on his behalf, he being the only

appellant, that, by virtue of the bankrupt proceedings, all his property became vested in his assignee, who was thenceforward a necessary party, and the subsequent proceedings are erroneous because he was not brought before the court. But if the position assumed be correct, Cardwell ceased to have any interest in the subject-matter of the suit, and could not appeal from the decree so far as it undertook to dispose of the property. It is, however, now well settled that an assignee in bankruptcy of a mortgagor, or grantor in a trust assignment, who is appointed during the pendency of proceedings for the foreclosure and sale of the trust property, stands like any other purchaser *pendente lite,* and must make himself a party to the suit if he wishes to assert his rights. Upon his failure to do so, the court may proceed as if no assignment in bankruptcy had ever been made: *Eyster* v. *Gaff,* 91 U. S., 521; *Doe* v. *Childress,* 21 Wall., 642. The assignee takes subject to the existing liens, the right of the lien creditor not being affected by the bankruptcy: *Yeatman* v. *Savings Institution,* 95 U. S., 764; *Jerome* v. *McCarter,* 94 U. S., 734.

The chancellor was, therefore, clearly right in subjecting the trust property to the satisfaction of the complainant's debt, notwithstanding the bankruptcy of Cardwell pending the litigation, the assignee not having made himself a party or taken any steps to assert his rights.

The chancellor was only in error in rendering a personal judgment against Cardwell for the complainant's debt, if such was his intention. The language

of the decree fairly implies such a judgment, and the
decree to this extent will be modified.

A sale of the trust property, a tract of land, was
made by the master under the decree, and the sale re-
ported. Cardwell filed several exceptions to this report.
One of these exceptions was based upon the defend-
ant's discharge in bankruptcy, a point already consid-
ered. Another exception was, that the case had been
brought up to this court by writ of error, which seems
not to have been true in point of fact, and would
have been of no avail if true, there being no super-
sedeas. A third objection to the advertisement has
been abandoned. The exception most relied on in
argument was, that the master had sold the whole of
the tract of land, without following the decree in
selling only so much as was sufficient to satisfy the
decree. The report shows a sale of the entire tract
at public vendue, the complainant being the last and
highest bidder at the amount of his debt, interest and
costs. The decree declared that the complainant had
a lien on the property to the extent of his debt, and
directed the master to sell the land to satisfy the
decree. The decree authorizes the master, in his dis-
cretion, to divide the land into two or more parcels,
if practicable, "and he may sell them separately or
in one body as he deems best." He may also, says
the decree, in his discretion, if he thinks it practica-
ble, divide or sell said lands so as to leave one par-
cel of the land, including the mansion house, to de-
fendant Cardwell, provided, in so doing, the sales of
the other lands will themselves alone satisfy the de-

·cree. The master is further directed to consult the defendant Cardwell as to the best mode of dividing the land for sale, and to adopt his plan if deemed practicable. " But," adds the decree, " the clerk and master, if necessary to satisfy this decree, is required to sell all the land in one or more tracts as he may see proper." It is obvious, that while anxious to consult the wishes of the defendant Cardwell in the sale of the property, the whole matter was left to the sound discretion of the master, coupled with the imperative requirement that the whole land, if necessary, should be sold to satisfy the decree. The report of the master shows that the defendant, instead of consulting with him, sought to stop the sale by a writ of error and supersedeas. The defendant offered no plan of division for a sale of the land in parcels, as he had the right to do, both by the decree and by statute. The master was left at liberty to exercise his discretion, and he has done so by a sale of the land in one body. This discretion would not be interfered with except in a case of abuse, which does not appear in the present instance.

The chancellor's decree will be affirmed, with the modification of the personal judgment against Cardwell. The costs of this court will be paid by the appellee.