In re IROQUOIS UTILITIES, Inc.

(Circuit Court of Appeals, Second Circuit. March 3, 1924.)

No. 289.

1. Bankruptcy ⬷446—Only questions of law may be considered on petition to revise.

On a petition to revise, only questions of law may be reviewed, and the appellate court will take the facts as found by the District Court, and, where there are no specific findings of fact, will look to the opinion, if any, of that court.

2. Bankruptcy ⬷217(3)—Decree taken within four months of bankruptcy not affected by adjudication if for enforcement of valid prior lien.

A judgmnt or decree in enforcement of a valid pre-existing lien, though taken within four months prior to the filing of a petition in bankruptcy, is not invalidated by Bankruptcy Act, § 67f (Comp. St. § 9651), which applies only to judgments creating liens.

3. Bankruptcy ⬷217(1)—Court is without power to restrain prosecution of pending suit to foreclose mortgage made before four months' period.

· A court of bankruptcy is without power to restrain further prosecution of a foreclosure suit begun prior to the filing of the petition in re-

⬷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

spect of a mortgage lien created more than four months prior to the filing of the petition.

4. **Bankruptcy ⬦⬦217(1)—Court is without power to take property from prior possession of state court.**

Where, prior to the filing of a petition in bankruptcy, a state court in a suit to foreclose a mortgage on property of bankrupt, given more than four months previously, had appointed receivers for the property and had entered a decree of foreclosure, with order of sale, that court had complete jurisdiction of the property, and the bankruptcy court was without power to restrain further proceedings in the state court, or by a summary order to require the property to be turned over to the trustee.

5. **Bankruptcy ⬦⬦217(1)—Court may stay entry of deficiency judgment against bankrupt.**

Though a state court has acquired exclusive jurisdiction of property of a bankrupt in a suit to foreclose a mortgage therein, the bankruptcy court under Bankruptcy Act, § 11a (Comp. St. § 9595), may stay entry of deficiency judgment against the bankrupt therein.

Petition to Revise an Order of the District Court of the United States for the Western District of New York.

In the matter of the Iroquois Utilities, Inc. On petition of the City Bank Trust Company, trustee, and Harold R. Waldron, receiver, to revise an order of the District Court. Reversed.

Petition to revise an order of the District Court for the Western District of New York enjoining proceedings in a foreclosure action in the New York Supreme Court and ordering that possession of the property of the bankrupt be given to the trustee in bankruptcy.

Iroquois Utilities, Inc., is a domestic corporation engaged in the manufacture, distribution, and sale of electricity for lighting and power purposes. Its properties are in the counties of Erie, Chautauqua, and Cattaraugus, and consist principally of real estate, water, and steam power plants for the generation of electricity, transmission and distribution lines, water rights, privileges, and franchises, together with various machinery, equipment, and appliances connected therewith.

On or about July 1, 1918, Iroquois Utilities, Inc., executed and delivered to Central City Trust Company of Syracuse, N. Y., as trustee, a mortgage or deed of trust for the purpose of securing the payment of its first mortgage 6 per cent. gold bonds in the aggregate sum of not more than $1,000,000. The mortgage covered all of the property of the mortgagor in the counties above named, then owned by it and thereafter to be acquired. The mortgage was approved by the Public Service Commission for the Second District of the State of New York, which authorized the issuance and sale of $89,000 of bonds under said mortgage.

Subsequently, the City Bank Trust Company of Syracuse was substituted as trustee in place of Central City Trust Company. In July, 1918, $89,000 of bonds secured by the mortgage were executed by the mortgagor, certified by the trustee and sold, and are now outstanding and unpaid. In June, 1922, the Public Service Commission authorized the issuance of $32,500 additional bonds under the mortgage, the proceeds to be used in retiring an equal face amount of second mortgage bonds then issued and outstanding, pursuant to a second mortgage covering the property of said Iroquois Utilities, Inc., and such additional bonds were thereafter executed by the mortgagor, certified by the trustee, and delivered to the holders of the second mortgage bonds in exchange for the surrender and cancellation of an equal amount of second mortgage bonds.

Default having been made in the payment of interest due on the bonds January 1, 1922, and July 1, 1922, and judgments having been taken against Iroquois Utilities, Inc., which remained unpaid and unsatisfied, and in pursuance of the terms of the mortgage, on December 18, 1922, City Bank Trust Com-

⬦⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pany, as trustee, commenced an action in the New York Supreme Court, Erie County, for the foreclosure of the mortgage and sale of the properties by it, covered thereby. On December 18, 1922, the summons, complaint, and notice of pendency of action were filed in the office of the clerk of Erie county, and thereafter duly filed in the office of the clerks of the counties of Chautauqua and Cattaraugus, and on December 18, 1922, by an order of the Supreme Court of the State of New York, Harold R. Waldron was appointed receiver of the property, rights, franchises, and privileges of Iroquois Utilities, Inc., with power to operate and control the same. The receiver duly qualified and on December 19, 1922, took possession of all of the property, rights, and franchises of said Iroquois Utilities, Inc., and ever since has been and now is in possession and operation of the same.

The properties of Iroquois Utilities, Inc., are also incumbered by a second mortgage, executed on or about September 1, 1920, to secure an issue of $150,000 7 per cent. second mortgage bonds, of which $116,000 are now outstanding, also by a third mortgage, dated on or about June 1, 1921, executed by Iroquois Utilities, Inc., to secure an issue of $100,000 10 per cent. notes, of which $68,600 are now outstanding.

On January 15, 1923, a petition in involuntary bankruptcy was filed in the District Court for the Western District of New York, and on June 8, 1923, an order of adjudication in bankruptcy was duly made and filed against Iroquois Utilities, Inc., and on August 7, 1923, Charles C. Jones was appointed trustee in bankruptcy.

On June 22, 1923, an interlocutory judgment of foreclosure and sale was duly made and entered in the New York Supreme Court in the foreclosure action which, among other things, ordered, adjudged, and decreed that the mortgaged property of said Iroquois Utilities, Inc. be sold at public auction by and under the direction of Edward C. Handwork of Buffalo, N. Y., who was appointed referee for that purpose. It was further provided in said judgment that all questions as to the validity of any of the bonds issued under the mortgage be reserved for future determination and providing that any party after the sale and confirmation thereof, might apply at the foot of the decree for such further order or supplemental judgment as might be necessary for such purpose.

Pursuant to the judgment, the referee duly gave notice by publication and otherwise as required by law of the sale of the properties to be held on August 8, 1923.

On or about July 24, 1923, Moynihan & Thompson, copartners, doing business as Pittsburgh & Freeport Coal Company, of Jamestown, N. Y., one of the petitioning creditors, presented a petition to the District Court for the Western District of New York and obtained an order requiring City Bank Trust Company, plaintiff, in the foreclosure action, Waldron, receiver of the property of Iroquois Utilities, Inc., and Handwork, referee, to show cause on July 31, 1923, why an order should not be made enjoining the sale under the foreclosure action, pending further proceedings in bankruptcy and until the further order of the court.

On the return day of the order to show cause, City Bank Trust Company and Waldron appeared by their attorneys and filed answering affidavits, and the court made an order granting a temporary stay of sale until September 4, 1923. In the meantime, on August 7, 1923, Jones was appointed trustee.

On September 4, 1923, the trustee in bankruptcy appeared by his attorney, and the court granted a further temporary stay of sale until September 14, 1923, and, in the meantime, handed down his opinion, in which he stated at the end thereof that the order sought staying further proceedings in the state court and permanently restraining the sale in the foreclosure action was granted. The trustee having submitted a proposed order, the matter was further held until September 22, 1923, for the purpose of settlement of the order, at which time the court permitted a further answer to be filed on the part of City Bank Trust Company and Waldron, specifically raising objection to the jurisdiction of the court in a summary proceeding to make an order directing that the possession of the property be given to the trustee in bankruptcy and permanently restraining further proceedings in the foreclosure action, and the court took the matter under further advisement, and

on October 30, 1923, made an order, restraining all further proceedings in the foreclosure action and directing that the possession of the property then in the hands of Waldron, as receiver, be given to the trustee.

The answer filed by City Bank Trust Company and Waldron, inter alia, alleged that the property of Iroquois Utilities, Inc., covered by the mortgage, was in the possession of Waldron, as receiver, and had been in his possession since December 18, 1922, pursuant to an order of the New York Supreme Court, and that it had never been in the possession of the trustee in bankruptcy; that the foreclosure had been commenced and service of the papers made upon the defendants therein named prior to the commencement of bankruptcy proceedings; and that the City Bank Trust Company, as such trustee, and Waldron, as receiver, were adverse claimants to the mortgaged property and had physical possession and control thereof, and alleged that Waldron, as such receiver, had and asserted a valid lien thereon for his services and commissions as such receiver and for his disbursements, expenses, and obligations incurred as such receiver, and the answer further set forth the facts in relation to said mortgage for the purpose of raising a jurisdictional question, and further alleged that the trustee of the mortgage and the receiver objected to the determination of their rights in the mortgaged property and the right to the possession thereof by summary proceedings in bankruptcy, and demanded that their right be heard and determined in a plenary action, brought in a court of competent jurisdiction, and asserted that the District Court had no jurisdiction on summary application, and to hear and determine any question affecting or concerning the validity or extent of their claims or the right to the possession of said mortgaged property.

The mortgage or deed of trust, inter alia, contained the following covenant and provisions:

"In case foreclosure be instituted, the trustee shall be entitled to have itself or some other person appointed receiver by the court to take charge of, operate and control the properties, rights, franchises, privileges and immunities hereby conveyed."

No question at any time has been raised as to the validity of this mortgage or deed of trust to the extent of $89,000 being the amount of bonds originally authorized, issued, and sold under the terms and provisions of said mortgage. The answer filed in the foreclosure action by the trustee for the second mortgage bondholders raised substantially, as its only issue, the question as to the validity of the additional $32,500 of bonds, authorized, issued, and sold under said mortgage, which question remains to be determined in said foreclosure action. This answer was the only answer filed or served in the foreclosure action, and also alleged the failure of Iroquois Utilities, Inc., to pay its interest on its first mortgage bonds and its default in payment of taxes and interest for more than six months; that judgments had been taken against it; and that the value of its property and franchises was very much less than the amount of its first and second mortgage bonds outstanding.

Chapman, Newell & Crane, of Syracuse, N. Y. (Elton H. Beals, of Buffalo, N. Y., of counsel), for petitioners.

C. A. Pickard, of Jamestown, N. Y. (James E. Bixby, of Gowanda, N. Y., of counsel), for respondent.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). [1] We have repeatedly pointed out that, on a petition to revise, we do not review the facts but consider only questions of law. In re Nagel (C. C. A.) 278 Fed. 105; In re B. & R. Glove Corp. (C. C. A.) 279 Fed. 372; In re Miltones (C. C. A.) 286 Fed. 806.

We have also stated that "we take the facts as found by the District Court," and, where there are no specific findings of fact, we look to

the opinion, if any, of the District Court. In re Nagel, supra; In re Miltones (C. C. A.) 279 Fed. 106.

Bearing this practice in mind, we have no occasion to inquire into the merits of the acrimonious controversy which this record discloses.

[2] 1. The first question argued at bar was whether the bankruptcy court had power to enjoin the further prosecution of the foreclosure action which had been begun in the New York Supreme Court prior to the filing of the petition in involuntary bankruptcy.

The dates are important. The date of the execution and delivery of the mortgage was July 1, 1918. The date when the foreclosure suit was duly commenced in the New York Supreme Court was December 18, 1922, and the date when the petition in bankruptcy was filed in the District Court was January 15, 1923.

It thus appears that the mortgage lien was created some 4½ years prior to the filing of the bankruptcy petition, or, in other words, more than 4 months prior to such filing. The mortgage lien, therefore, was not subject to the provisions of section 67f of the Bankruptcy Act (Comp. St. § 9651).

As said in Metcalf v. Barker, 187 U. S. 165, 174, 23 Sup. Ct. 67, 71 (47 L. Ed. 122):

"A judgment or decree in enforcement of an otherwise valid pre-existing lien is not the judgment denounced by the statute, which is plainly confined to judgments *creating* liens." (Italics ours.) .

The fact that the foreclosure suit was begun within four months of the date of filing the bankruptcy petition is immaterial so far as affects the operation of section 67f.

The question as to whether the bankruptcy court had any power to restrain the further prosecution of the foreclosure suit arises because the New York Supreme Court first acquired jurisdiction in a proceeding in rem where the lien was created by the act of the parties prior to the four months period. That question must not be confused with the one which arises where insolvency proceedings of some character have been begun in a state court prior to the filing of the bankruptcy petition, as in Re Federal Mail & Express Co. (D. C.) 233 Fed. 691.

In New River Coal Land Co. v. Ruffner, 165 Fed. 881, 91 C. C. A. 559, the facts demonstrate that the action, in effect, was a creditors' action wherein the state court was asked to and did appoint a receiver of the property to take charge of it and after due administration to hold the balance, if any, subject to the order of the court. The court said at page 887 of 165 Fed. (91 C. C. A. 565):

"It is evident from the character of the suit and the condition of the colliery company, as disclosed by the pleadings, that at the time of the commencement of the suit it was insolvent; it was unable to meet its obligations or to carry on its work, so alleged in the bill filed, and by the cross-bill of the coal land company its entire property was claimed by one creditor to the exclusion of all others.

"The appointment by a court of a receiver for an insolvent debtor is an act of bankruptcy on the part of such debtor."

297 F.—26

It also appeared in that case that the proceeding in the state court which might have resulted in a judgment was within four months after filing of the bankruptcy petition

[3] While there is some difference of opinion among District Courts upon varying states of facts, we have been unable to find any case decided by the Supreme Court or any Circuit Court of Appeals which holds, upon facts similar with those in the case at bar, that the bankruptcy court has the power to restrain further prosecution of a foreclosure suit begun prior to the filing of the petition in bankruptcy in respect of a mortgage lien created more than four months prior to the filing of the petition.

[4] On the other hand, In re Rohrer, 177 Fed. 381, 100 C. C. A. 613, decided by a distinguished court, is precisely in point with the case at bar. In that case, the mortgage and notes secured by it were executed and delivered on February 28, 1908, and the mortgage was recorded on May 4, 1908. The foreclosure suit was begun on August 31, 1909. The decree in foreclosure, including a personal judgment against Rohrer for any deficiency, was entered on October 25, 1909, the appropriate writ of execution was issued on November 2, 1909, and the sheriff on the same day began an advertisement of the sale of the land on December 14, 1909. On November 5, 1909, an involuntary petition in bankruptcy was filed against Rohrer, and on November 15, 1909, he was adjudicated a bankrupt. As in the case at bar, it will be noted that the mortgage in the Rohrer Case was executed and delivered more than four months prior to the bankruptcy petition while the foreclosure suit was begun within four months of the date of the filing of the bankruptcy petition.

On November 29, 1909, certain creditors of Rohrer moved for an injunction against Hofer, the mortgagee, to stay the sale, and this motion was granted and an injunction issued on December 9th. Hofer's motion for rehearing and to vacate the injunction order was overruled on January 4, 1910. Meanwhile on December 21, 1909, three trustees were chosen and qualified in the bankruptcy proceeding. The court said:

"The state court acquired complete jurisdiction and control over the defendants and the property prior to the commencement of the bankruptcy proceeding against Rohrer, and that jurisdiction was not divested by anything done in that proceeding; 'the rule being applicable that the court which first obtains rightful jurisdiction over the subject-matter should not be interfered with.' * * *

"Power vested by section 11a of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 549, U. S. Comp. St. 1901, p. 3426) to stay a suit 'founded upon a claim from which a discharge would be a release' is not applicable to the proceeding in rem involved in the action to foreclose."

In arriving at this conclusion, the court referred to many cases, to which may be added Eyster v. Gaff, 91 U. S. 521, 23 L. Ed. 403; Jerome v. McCarter, 94 U. S. 734, 24 L. Ed. 136; Davis et al. v. Railroad Company, 1 Woods, 661, Fed. Cas. No. 3,648; and In re Dayton Coal & Iron Co., 291 Fed. 390.

Although involving a different kind of proceeding and a different state of facts, Judge Learned Hand, in Re Hoey, Tilden & Co. (D. C.) 292 Fed. 269, 270, pointed out as follows:

"There is, however, no case that I can find which holds that after a suit in rem has been started in a state court, bankruptcy proceedings are in a different position from any other judicial proceedings; or that the earlier court must yield because the later court is one of bankruptcy. Furthermore, it is not in this class of cases necessary that the earlier court should have actually assumed custody of the res before the second suit is commenced. It is enough that the first should be one in which custody could be assumed at any time after bill filed."

Our conclusion is that the court had no power to restrain the further prosecution of the foreclosure suit.

[5] Of course, under section 11a of the Bankruptcy Act (Comp. St. § 9595), the court had power to stay the entry of a deficiency judgment against the bankrupt "until twelve months after the date of such. adjudication, or, if within that time such person applies for a discharge, then until the question of such discharge is determined."

2. What we have said supra disposes of the case, but we deem it desirable also to make clear that the state court receiver is an adverse claimant. It is contended on behalf of the trustee in bankruptcy that the adverse claim is colorable, but the District Judge did not so hold. He stated:

"The principal contention is that the foreclosure proceeding was instituted in bad faith, and to cheat and defraud the second bondholders and the unsecured creditors. I am not prepared to say that the evidence establishes this contention, but I nevertheless think the unsecured creditors should have an opportunity to test the validity of the mortgage or limit its scope, and to dispute the validity of the bonds if they are so advised in the bankruptcy court."

And while we do not express any opinion upon the merits, our examination of the record shows that there is a real dispute between the parties. In such circumstances, the bankruptcy court did not have power by summary order to compel the transfer of possession of the property from the state court receiver to the trustee in bankruptcy, as we have frequently held. It is sufficient to cite In re Midtown Contracting Co., 243 Fed. 56, 155 C. C. A. 586, and In re Wood (C. C. A.) 278 Fed. 355.

3. Under section 11b of the Bankruptcy Act (Comp. St. § 9595), it is provided that—

"The court may order the trustee to enter his appearance and defend any pending suit against the bankrupt."

It will be entirely proper for the court, in its discretion, to make such an order in this case, and the reservation in the interlocutory judgment of foreclosure and sale provides that all questions as to the validity of any of the bonds be reserved for future determination and opportunity has been safeguarded to apply at the foot of the decree for such further order or supplemental judgment as may be necessary for such purpose.

We have no reason to doubt that, upon appropriate application, the state court will accord to the trustee in bankruptcy full opportunity to intervene and to make such application or take such further proceedings as in the opinion of the state court may be right and proper.

The order below is reversed, with costs, but without prejudice to the granting, under section 11a, of a stay, if any in the discretion of the District Court, in respect of the entry of a deficiency judgment against the bankrupt and without prejudice to the entry of an order, in the discretion of the District Court, authorizing or directing the trustee to take the necessary steps to intervene or become a party to the foreclosure suit now pending in the New York Supreme Court.