## WOODBURY v. PICKERING LUMBER CO.
### No. 1657.

District Court, W. D. Missouri, W. D.
Aug. 1, 1932.

See, also, 1 F. Supp. 82.

Chas. P. Woodbury and Phineas Rosenberg, both of Kansas City, Mo., for plaintiff.

Baker, Botts, Andrews & Wharton and Fred A. Boxley, all of Kansas City, Mo., for defendant.

REEVES, District Judge.

The receiver has filed an application for the issuance of receiver's certificates. In order that said certificates might be readily sold, it is sought to have them secured by a first lien on the properties of the receivership. This involves a displacement of first mortgage liens now existing, and would make the lien of the receiver's certificates paramount.

Objections are made by the bondholders or mortgagees, the trustees, and others interested in the estate.

The receiver is not operating the business of the defendant corporation. Nothing is being done, save only the performance of such acts as will conserve and preserve the corpus of the estate. While there are large and valuable properties in the estate, they are

not liquid, and the expenses of the receivership have very nearly depleted funds available for the preservation of the property. According to estimates, the necessary demands upon the estate will exhaust the funds available in a very short time.

Among other accruing obligations of the estate are taxes of various kinds, and the necessary expenses incident to proper care and preservation of the property.

The objecting creditors contend that receiver's certificates cannot be issued and secured in the manner requested save only in cases of public or quasi public corporations. These questions will be discussed in the course of this memorandum opinion.

1. The general rule is that receiver's certificates issued and secured by displacing other liens can only be justified in the operation of public or quasi public utilities. Exceptions have been made, however, where the preservation of the property of a private corporation requires the operation or continuance of the business. The Supreme Court of the United States in Jerome v. McCarter, 94 U. S. 734, loc. cit. 738, 24 L. Ed. 136, held that the proper preservation of the property involved in the receivership in that case made it necessary for the court to order the completion of the canal. This was done in order to prevent a forfeiture of valuable property of the estate. The court used this language: "The canal was unfinished, and there were in the receiver's hands no funds to finish it. Hence there was a necessity for making the order which the court made,—a necessity attending the administration of the trust the court had undertaken. The order was necessary alike for the lien creditors and for the mortgagors."

It should be stated, however, that the mortgagees or lien creditors made no objection at the time to the order of the court subordinating their security. The principle was announced, however, that such an order was proper under all circumstances.

While Union Trust Company v. Illinois Midland R. Co., 117 U. S. 434, 6 S. Ct. 809, 820, 29 L. Ed. 963, was a case involving the operation of a utility, that is, a railroad, yet the court announced the true doctrine applicable alike both to utilities and private corporations. This pronouncement was made because in the operation of a utility the courts have said that displacement of liens might be necessary for a twofold purpose: First, to preserve the corpus of the estate; and, second, to serve the public because of its interest.

As stated, the court dealt with the sole question of conserving the estate when it said: "Property subject to liens and claims and debts, of various characters and ranks, which is brought within the cognizance of a court of equity for administration, and conversion into money, and distribution, is a trust fund. It is to be preserved for those entitled to it. This must be done by the hands of the court, through officers. The character of the property gives character to the particular species of preservation which it requires. Unimproved land may lie idle, with only payment of taxes. Improved property should be rented. Movable property that is not perishable may be locked up and kept; but if perishable, it must be sold by way of preservation."

It was then stated in accordance with the true conception that a railroad and its equipment constituted "a peculiar species of property. Not only will its structures deteriorate and decay and perish if not cared for and kept up, but its business and good-will will pass away if it is not run and kept in good order. Moreover, a railroad is a matter of public concern."

The attitude of the courts in cases of this character was aptly expressed in Bernard v. Union Trust Company (C. C. A.) 159 F. 620, loc. cit. 623, 16 L. R. A. (N. S) 1118, where the court said: "All the authorities agree that the power to issue certificates of indebtedness and to make them a first lien is a power liable to great abuse, and to be sparingly exercised, and no case has been cited or found wherein a certificate issued by the receiver of a private corporation, in circumstances at all analogous to those appearing in this record, has been allowed priority over the mortgage bondholders."

To make clear the latter part of the foregoing quotation, it should be stated in that case the court undertook to make the receiver's certificates paramount when issued in payment for supplies used in the operation of the corporation. Such supplies had been furnished prior to the appointment of a receiver.

In Wallace v. Loomis, 97 U. S. 146, loc. cit. 162, 24 L. Ed. 895, the Supreme Court, again dealing with a utility, announced a principle which pervades all the classes of receiverships, both of public and private corporations. In sustaining the right to displace first mortgage bonds in favor of receiver's certificates, the court said: "It is a part of that jurisdiction, always exercised by the court, by which it is its duty to pro-

tect and preserve the trust funds in its hands. It is, undoubtedly, a power to be exercised with great caution; and, if possible, with the consent or acquiescence of the parties interested in the fund."

As is said in Tardy's Smith on Receivers, vol. 2, § 553, p. 1596: "Some confusion exists among the decisions in respect to the extent to which a court has a right to go in the issuance of receiver's certificates in the case of a private corporation or industrial enterprise, which performs no particular public services to bring it within the class of public utilities. This confusion exists because of a failure to distinguish between purposes which are unquestionably ones of preservation and protection of the receivership property and those purposes which are in fact of that class, though operative in character, because of the fact that the receivership property itself would be destroyed or greatly depreciated in value if not kept in operation."

■ 2. In the instant case, the property undeniably is used solely for private purposes, and is employed in no sense for a public or quasi public purpose. The general rule, therefore, in regard to such a class of property, is that: "The court will only issue receiver's certificates constituting a first lien upon the receivership property for the purpose of protecting or preserving the property itself and realizing thereon, and will not issue such certificates for the mere purpose of continuing the operation of the business. The duty of preserving the property is placed upon the court when the receiver is appointed. * * * The necessity for obtaining the money in such a manner must be imperative and paramount." Tardy's Smith on Receivers, vol. 2, § 553, pp. 1597, 1598, 1599.

The sole question here presented is whether the necessity for obtaining the money in the manner requested is imperative and paramount.

According to the evidence before the court, large sums of money in the way of taxes are accruing upon the properties of the receivership. These are first liens, and are paramount. An identical question was presented to the Eighth Circuit Court of Appeals in Hanna v. State Trust Co., 70 F. 2, loc. cit. 5, 30 L. R. A. 201. In this case Judge Caldwell accurately stated the problem as follows: "The precise question in this case is whether a court of chancery which has appointed a receiver for an insolvent private corporation * * * may, against the objection of the first mortgagee, authorize its receiver to issue receiver's certificates to raise money to carry on the business of the insolvent corporation and to improve its lands, and make such certificates a first and paramount lien upon the lands covered by the first mortgage. So far as we are advised, the power to do this has been denied in every case in which the question has arisen."

■ However, the court sustained that portion of the order which undertook to provide money for the payment of taxes. The court said: "Taxes are the first and paramount lien on all property, and must be paid. When taxes are due on property in the hands of a receiver, and he has no funds to pay them, the court will authorize him to borrow money for that purpose, and make the obligation given for the money so borrowed a prior lien on the property on which the taxes were due. This is not fixing a new or additional lien on the property, or displacing any prior lien. It is simply changing the form of the lien from one for taxes to one for money borrowed to pay the taxes."

The rule stated in the above case is the true rule, and all of the authorities, without exception, adhere to it.

3. Attending to the authorities cited by the bondholders: At different times and in various cases, such as Atkinson & Company v. Aldrich-Clisbee Company (D. C.) 248 F. 134, the courts have discussed tax obligations in receivership cases, but these were cases of priorities in tax claims themselves where there was no question as to available funds to meet the obligations. Unquestionably taxes constitute a receivership expense, when accruing during the receivership. But this fact does not change or modify the rule that taxes constitute a first lien upon the property of the estate, and, where compelled to do so, the court can and will subordinate first mortgage liens in order to raise money to discharge pressing tax obligations.

In the instant case, it has been made to appear that taxes of various kinds and character are accruing against the receivership property, and that there are no available funds to meet such obligations.

The court is of the opinion that there is an imperative and paramount necessity to obtain money for their discharge as they mature for payment. If it may then appear that the receiver is without funds to discharge such obligations, the order requested will be made. The certificates so issued will be secured by a first lien upon the property affected by the taxes. This does not involve a displacement of prior mortgages, but simply places the receiver's certificates in the same class with the taxes.