665 F.2d 397
 Frances SMITH, et al., Plaintiffs, Appellees,
v.
AMERICAN INDUSTRIAL RESEARCH CORPORATION, et al.,
Defendants, Appellees,
Antonio Cobbuzi, et al., Plaintiffs, Appellants.
Frances SMITH, et al., Plaintiffs, Appellees,
v.
AMERICAN INDUSTRIAL RESEARCH CORPORATION, et al.,
Defendants, Appellees,
Daniel B. Bickford, Receiver, Defendant, Appellant.
Frances SMITH, et al., Plaintiffs, Appellees,
v.
AMERICAN INDUSTRIAL RESEARCH CORPORATION, (AIRCO) et al.,
Defendants, Appellees,
Daniel B. Bickford, Receiver, Defendant, Appellant.
 Nos. 80-1842, 81-1034 and 81-1384.
 United States Court of Appeals,
First Circuit.
 Argued Oct. 5, 1981.
Decided Nov. 16, 1981.
 
 Ronald F. Kehoe, Boston, Mass., with whom Haussermann, Davison & Shattuck, Boston, Mass., Alan L. Grenier, and Ardiff, Ardiff & Morse, Danvers, Mass., were on brief, for plaintiffs, appellants.
 Jeffrey M. Smith, Boston, Mass., with whom Paul T. Smith, and Harvey R. Peters, Boston, Mass., were on brief for plaintiffs, appellees, Frances Smith, et al.
 Rosalind C. Cohen, Asst. Gen. Counsel, Washington, D. C., with whom Ralph C. Ferrara, Gen. Counsel, Thomas P. Lemke, Atty., Securities and Exchange Commission, and Paul Gonson, Sol., Washington, D. C., were on brief, for the Securities and Exchange Commission, amicus curiae.
 Before COFFIN, Chief Judge, BREYER, Circuit Judge, and BONSAL,* District Judge.
 BREYER, Circuit Judge.
 
 
 1
 In September 1974, the Securities and Exchange Commission ("SEC") brought a fraud action in the Massachusetts federal district court against J & B Industries, American Industrial Research Corporation, and others (all of whom we shall refer to generically as the "AIRCO defendants"). The case was assigned to Senior Judge Murray, who, at the SEC's request appointed a receiver, Daniel Bickford, "to protect and preserve the defendants' property," presumably for the benefit of defrauded investors. In February 1975, a group of those investors, known as the "Smith plaintiffs," brought a similar private action, also in the Massachusetts federal district court. Although the private plaintiffs mentioned the SEC action as a related case, their case was assigned, not to Judge Murray, but to Judge Tauro. The SEC won its action before Judge Murray, who entered permanent injunctions against the defendants in 1975 and 1976. The private plaintiffs also won their action before Judge Tauro, primarily by default judgment.
 
 
 2
 Judge Tauro's default judgment of November 1980[1] led to these appeals.[2] In that judgment, he not only found against the AIRCO defendants, but he also ordered Bickford, the receiver, "to pay immediately and with priority" to the plaintiffs approximately $158,000 plus interest "from the assets being held by him as receiver." Receiver Bickford, supported by the SEC, argues that Judge Tauro may well have had the power to enter a judgment against the AIRCO defendants, but he could not enter such a judgment against him as receiver-at the least, he could not order the receiver to pay the Smith plaintiffs from the receivership assets "with priority." Only Judge Murray, he claims, could do that.
 
 
 3
 Bickford and the SEC base their argument in part upon the well-established rule that a receiver cannot be sued elsewhere than in the receivership court without that court's permission. Barton v. Barbour, 104 U.S. 126, 26 L.Ed. 672 (1881). They add that Judge Murray did not give permission to sue the receiver elsewhere. They also argue that one important duty of a receivership court is the establishing of priorities as to assets likely to be smaller in total amount than the combined sum of the legitimate claims against them. If other courts are allowed to order payment out of the assets, plaintiffs in those courts may be given unfair preference over other claimants. In this case, for example, Judge Tauro's order would give the Smith plaintiffs $158,000 plus interest out of a total fund of about $400,000, leaving the remainder to satisfy others whom the AIRCO defendants also defrauded. The result is that the Smith plaintiffs would receive more than twice the amount they invested while others similarly defrauded would receive only 3% of what they had invested.
 
 
 4
 The Smith plaintiffs respond that as a technical matter, permission to sue the receiver was not necessary because they sued in the same court (the District of Massachusetts), see Jerome v. McCarter, 94 U.S. 734, 737, 24 L.Ed. 136 (1877), albeit they were assigned a different judge. In any event, they claim that they received at least implied permission to sue the receiver.[3] Barnette v. Wells Fargo Nevada Nat'l Bank, 270 U.S. 438, 442, 46 S.Ct. 326, 327, 70 L.Ed. 669 (1926). They also state that it is not unfair to allow them priority to recover their entire judgment out of the AIRCO defendants' assets. Their reasons as set out at various points in the record, include the assertions (1) that they brought their action at the receiver's suggestion as a way to establish the legitimacy of their claims; (2) that they sought to have their action heard by Judge Murray, but he would not allow consolidation or intervention; (3) that the receivership languished for several years, the receiver taking no steps to arrange for distribution of the assets until their action forced him to do so; (4) that the receiver wrongfully failed to attend a pretrial conference in Judge Tauro's court, which, in turn, led to the default judgment against him; (5) that they are entitled to a greater return than other victims because they have done all the legal work necessary to obtain any return; (6) that presumably Judge Tauro has, or might, also consider the relative merits of the claims of other victims; and (7) that the receiver's proposed asset distribution plan, submitted to Judge Murray on April 20, 1981, takes no account whatsoever of the Smith plaintiffs' work, but, rather, treats them like all other investor-victims, awarding them roughly 9% of their initial investment.
 
 
 5
 Rather than enter the metaphysical argument about whether the District of Massachusetts is one court or several, we resolve this controversy under our power to supervise the adequacy of judicial procedures in lower federal courts. See La Buy v. Howes Leather Co., 352 U.S. 249, 259-60, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957); In re Ellsberg, 446 F.2d 954, 956 (1st Cir. 1971); United States v. Butera, 420 F.2d 564, 567 n.2, 568 n.7 (1st Cir. 1970); Delaney v. United States, 199 F.2d 107 (1st Cir. 1952). See generally Note, The Judge Made Supervisory Power of the Federal Courts, 53 Geo.L.J. 1050 (1965); Note, The Supervisory Power of the Federal Courts, 76 Harv.L.Rev. 1656 (1963). Sound judicial management requires that the equities and priorities among claimants to receivership assets normally be determined in the receivership proceeding-in this case the proceeding before Judge Murray. Barton v. Barbour, 104 U.S. at 136. See generally, 7 Part 2 Moore's Federal Practice, P 66.07(2) (1980); C. A. Wright & A. R. Miller Federal Practice and Procedure § 2984 (1973). The record contains nothing to suggest that Judge Murray wished or intended the actual division of assets to be determined elsewhere.[4] Nor does it contain any evidence that Judge Tauro took into account the claims of others when he ordered that the Smith plaintiffs be paid out of the receivership assets "immediately and with priority."[5] Even if the receiver was seriously at fault in failing to appear for a pretrial conference-a matter which the record leaves in doubt[6]-this fact would not justify penalizing other defrauded investors. Thus, it would seem appropriate to delete that portion of Judge Tauro's judgment that requires immediate, priority payment.
 
 
 6
 For the most part, the Smith plaintiffs' arguments to the contrary reflect a fear that the distribution will not be handled expeditiously or fairly in the receivership court. The record in this case, indeed, suggests that several years have passed without distribution,[7] that the major issue before the receivership has been the proper handling of the Smith plaintiffs,[8] and that the proceedings have occasionally become confused.[9] Though one cannot determine readily from the record who, if anyone, is at fault, it is difficult to believe that the entire matter could not have been handled more efficiently. We also note that the receiver's proposed distribution report makes no mention of the Smith plaintiffs' argument that they are entitled to some form of special treatment because of their expenditure of time and effort. Nonetheless, in recent months the receiver has moved expeditiously to create a plan; he assures us that the Smith plaintiffs will receive fair consideration; and Judge Murray has not yet approved any final distribution. We see no reason, therefore, why the distribution plan ought not to be developed, considered, and approved in the receivership court.
 
 
 7
 At the same time, we see no reason to set aside any other part of Judge Tauro's judgment. It is true that the judgment orders that the Smith plaintiffs recover $158,000 not only from the AIRCO defendants, but also from Bickford "as he is Receiver of the assets." But the receiver does not object to that part of the order. He stated before Judge Tauro that "our complaint, your honor, with the judgment that was entered in this case is not that you entered judgment for these plaintiffs in a certain amount or even that judgment was entered against the receiver...." Rather, his complaint is that he is ordered to satisfy the Smith plaintiffs' judgment first, and entirely, out of the receivership assets.[10] The receiver correctly assumes that the other portions of Judge Tauro's order do not prevent Judge Murray from weighing the claims of others together with the Smith plaintiffs' claims and judgment in determining how the AIRCO defendants' assets will finally be distributed.
 
 
 8
 The judgment entered by Judge Tauro will therefore be modified to strike from it paragraph five, which orders the receiver "to pay immediately and with priority, to each plaintiff the aforementioned sum due each plaintiff from the assets being held by him as receiver." We assume that the receiver will proceed expeditiously to secure adoption in the receivership court of a plan for the distribution of assets, which plan will take appropriate account of any special equitable considerations of the Smith plaintiffs if they exist.
 
 
 9
 So ordered.
 
 
 
 *
 Of the Southern District of New York, sitting by designation
 
 
 [1]
 Previously, default had been entered against the receiver in 1978. It was later removed with the assent of the plaintiffs. It was reentered in March 1980 when the receiver failed to appear at a status conference. Judgment was entered on this default in November 1980
 
 
 [2]
 Judge Tauro set a status conference in the Smith plaintiffs' case for March 10, 1980. When neither Bickford nor anyone representing the AIRCO defendants appeared, he entered a default order. On May 13, 1980, the Smith plaintiffs moved for a default judgment. Judge Tauro referred the matter to Magistrate Cohen, who, after hearing from Bickford and others, recommended that the motion for default judgment be granted. On November 25, 1980, Judge Tauro entered a default judgment. And after Judge Tauro denied a motion to vacate the judgment as to the payment order, Bickford appealed. Certain claimants, (the "Cobuzzi plaintiffs") who had previously intervened in the case, also appealed
 On April 14, 1981, Bickford, citing Rule 60(b), asked Judge Tauro for relief from the judgment. He noted that in the intervening few months, Judge Murray had begun to take steps to bring about a distribution of the assets and that Judge Murray had said he had not authorized any action before Judge Tauro against the receiver. Judge Tauro denied the receiver's motion. The receiver also appeals from this denial.
 All these appeals have been consolidated.
 
 
 [3]
 They state that they were willing to have their case consolidated with the proceeding in Judge Murray's court as early as October 1975, that the receiver and Judge Murray were aware that the receiver was a named defendant in their case and did not object, and that they actively sought to intervene in Judge Murray's proceedings in May 1980, but that Judge Murray denied their motion to intervene. In doing so, Judge Murray wrote,
 Denial of intervention in the main action here will not militate against the moving parties seeking judgment of their claims in Civil Action No. 75-732-T (in Judge Tauro's court), in which they are plaintiffs. Neither will denial of intervention prevent them from pursuing any claim they may have against the assets in the hands of the receiver.
 
 
 [4]
 Both the receiver and the SEC claim that Judge Murray's actions, and the language quoted in note 3, supra, at most show that Judge Murray had no objection to Judge Tauro adjudicating whether the Smith plaintiffs had a lawful claim against the AIRCO defendants, that the receiver must recognize as such. We agree that Judge Murray nowhere indicates that he wishes or desires Judge Tauro to determine the appropriate distribution himself
 
 
 [5]
 Magistrate Cohen, in deciding whether to recommend removal of the default judgment as to the receiver, appears to have considered whether the judgment hurt Bickford, rather than considering whether it might injure other potential claimants not in the Smith action. Bickford pointed out the problem of these others:
 MR. BICKFORD: ... Now, what do you want me to do, Judge? ... I'm in an awkward position because there are widows and orphans here. I don't think Paul Smith's wife ought to be put ahead of some poor, dumb widows and orphans out in the hinterlands.
 THE COURT: Why do you really care?
 MR. BICKFORD: It seems unjust, basically unjust.
 THE COURT: You know, maybe you want to wear the robe, but that's not your decision. Your decision is to marshal the assets and to disburse them according to court orders. And how are you prejudiced if Judge Tauro orders disbursement?
 Neither the Magistrate, nor Judge Tauro, appears to have considered with care whether priority payment to the Smith plaintiffs would unfairly injure these others.
 
 
 [6]
 Bickford stated that he simply did not receive notice of the conference. When he was shown records indicating that notice had been given, he conceded that his office might have been at fault. He noted that on other occasions he had shown up for hearings pursuant to a notice only to find that they had been moved or canceled. There is no indication of any culpable behavior on his part
 
 
 [7]
 The SEC first brought its case in Judge Murray's court in 1974. There appear to have been few contested proceedings. Bickford was first made a temporary receiver in 1974, and then, in 1976, he was made a permanent receiver. No report on distribution was made to Judge Murray until April 21, 1981
 
 
 [8]
 A substantial amount of the roughly $40,000 in fees and administrative expenses that have been, or are likely to be paid out of the receivership assets, seem to represent charges related to the Smith plaintiffs. Moreover, the receiver has asked that "an additional amount of $18,970.71 be reserved to cover this appeal" and some other expense
 
 
 [9]
 At no point prior to the entry of the default order was either Judge Tauro or Judge Murray clearly made aware of the likelihood of the conflict that has led to this appeal
 
 
 [10]
 In the hearing before us the following dialogues occurred:
 JUDGE BREYER: I take it that what you are actually complaining about is that Judge Tauro entered an order saying the Smith plaintiffs should be paid first ... The receiver ... (is saying): "It is my job to order in Judge Murray's court who gets paid when. Really (the Smith plaintiffs) ... should just get a judgment in Judge Tauro's court, come over to Judge Murray's court and they will be treated as they should be treated."
 COUNSEL FOR THE RECEIVER: Precisely.
 CHIEF JUDGE COFFIN: You have any objection to letting stand (Judge Tauro's) judgment that a claim exists in x amount?
 COUNSEL FOR THE RECEIVER: No, Your Honor, I think that's all he should have done.